**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 4 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

JOSEPH EDWARD SLOAN; BYRON
Z. MOLDO, Chapter 7 Trustee – In re:
JOSEPH EDWARD SLOAN, Debtor,

    Plaintiffs-Appellants/
    Cross-Appellees,

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

    Defendant-Appellee/
    Cross-Appellant.

Nos. 02-2050 and 02-2059

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
D.C. No. 00-CV-702-BB/WWD

---

Stephen L. Tucker, Tucker Law Firm, Santa Fe, New Mexico (Lisa K. Vigil, Vigil and Vigil, and Steven Vogel, Albuquerque, New Mexico, with him on the briefs), for Plaintiffs-Appellants/Cross-Appellees.

Terry R. Guebert (RaMona G. Bootes, with him on the brief), Guebert, Bruckner & Bootes, P.C., Albuquerque, New Mexico, for Defendant-Appellee/Cross-Appellant.

---

Before **KELLY**, **PORFILIO**, and **BRISCOE**, Circuit Judges.

**KELLY,** Circuit Judge.

---

Plaintiffs-Appellants/Cross-Appellees Sloan (Debtor and Insured) and Moldo (Bankruptcy Trustee) appeal from the district court's judgment awarding $560,000 in compensatory damages based upon breach of contract, bad faith failure to settle, and a violation of the New Mexico Insurance Practices Act. Defendant-Appellee/Cross-Appellant State Farm (Insurer) also appeals contending that several trial errors occurred. We affirm the judgment on liability, reverse the judgment insofar as damages and remand for a new trial on compensatory and punitive damages.

Background

The insured and his family were traveling eastbound on I-40 near Grants, New Mexico, during snowy weather when his vehicle crossed into the westbound lane, causing a head-on collision with the Shelton family. Mrs. Shelton was seriously injured. The Sheltons' lawyer offered to settle the claims of the family members for $300,000. Ultimately, the family members sued the insured. Prior to trial, the claims of the insured's two children were settled (for $35,001, and $20,001, respectively). The claims of Mr. and Mrs. Shelton were tried to a jury, resulting in judgments against the insured for $49,500 and $495,000, respectively.

State Farm paid the $49,500 judgment, but only paid $100,000 of the other judgment, resulting in an excess judgment of $395,000.

A key dispute in this case pertains to the insured's policy limits. The insurer maintains that the policy issued, designated policy form # 9805.5, limited coverage for bodily injury to $100,000 per person, and $300,000 per accident involving two or more persons, with the per accident limits subject to the per person limits. Thus, according to the insurer, only $100,000 of coverage was available to compensate Mrs. Shelton, the most seriously injured victim.

Early in the underlying litigation, the Sheltons' attorney obtained a certified copy of the policy from the insurer. That policy form is shown as # 9805.3 and is different from what the insurer now relies upon. The certified policy contains $100,000/$300,000 limits, however, the provision containing those limits had been held patently ambiguous by a Washington state court. Haney v. State Farm Ins. Co. 760 P.2d 950, 952-53 (Wash. Ct. App. 1988). Construing the contract in favor of the insured, the Haney court concluded that the per accident limits were not subject to the per person limits, resulting in an interpretation that renders the $100,000 per-person limit unenforceable in favor of the $300,000 limit. Id.; see also Andrews v. Nationwide Mut. Ins. Co., 467 A.2d 254, 258 (N.H. 1983).

The Sheltons' attorney notified the insurer of the ambiguous policy language in the context of a $300,000 demand. The insurer replied that it had

- 3 -

certified the wrong policy (Form # 9805.3) and that a later policy (Form # 9805.5), one that remedied the ambiguous language, was actually issued. Whether the change was the correction of an inadvertent error or an attempt to prevent the insured from exercising his contractual rights was the subject of the federal court trial. It is clear, however, that the insurer was well aware of the potential for an excess judgment against its insured.

On appeal, Plaintiffs contend that the district court erred in not submitting (1) punitive damages on the bad faith claim to the jury, because (2) the evidence supported compensatory damages and (3) there was sufficient evidence for punitive damages. Plaintiffs also object to the district court's (4) ordering remittitur without giving the Plaintiffs the option to consent or to have a new trial on damages. Defendant contends that (1) Plaintiffs were not entitled to have punitive damages submitted to the jury because they failed to object to the jury instructions which omitted this issue, (2) the compensatory award will not support the necessary finding for punitive damages, and (3) the evidence does not support punitive damages. Defendant agrees that (4) remittitur requires that the plaintiff be given an option to accept the remittitur or a new trial on damages. In its cross-appeal, Defendant argues that (5) the jury instructions and verdict form were faulty because they failed to prohibit double recovery, (6) the remittitur was inadequate to cure this problem, (7) the visiting district judge who presided at the

trial improperly rushed it, failed to timely advise Defendants of the need to summarize depositions (the court would not allow depositions to be read) while so advising the Plaintiffs, and made derogatory and negative comments about defense counsel and his evidence throughout the trial. Defendant seeks a new trial on compensatory damages only, or in the alternative, a new trial on liability and damages should we accept its contention that it was prejudiced by the district judge's conduct towards it. See Aplee. Br. at 58-59. Defendant urges this court to uphold the district court's grant of judgment as a matter of law (JMOL) on the punitive damages claim.

Discussion

We stayed these appeals pending resolution of a certified question of law on the punitive damages issue addressed to the New Mexico Supreme Court. Sloan v. State Farm Mut. Auto. Ins. Co. (In re: Sloan), 320 F.3d 1073 (2003). We now vacate that stay and proceed to the merits. Obviously, we were not persuaded by Defendant's contention that Plaintiffs forfeited the punitive damages issue by failing to object to the jury instructions and the verdict form that omitted the issue. See Fed. R. Civ. P. 51.[1] The district court granted JMOL

_____

[1] Effective December 1, 2003, Fed. R. Civ. P. 51 was amended. Either version of the rule would result in the same outcome. See Fed. R. Civ. P. 51(c)(2), (d)(1)(B).

on the punitive damages claim at the close of the Plaintiffs' case, reconsidered the issue after the Defendant's case upon Plaintiff's motion and adhered to its original ruling. Aplt. App. 653-654, 721. Thus, the district court made a legal determination, albeit on a factual issue and without the guidance we now have from the New Mexico Supreme Court, that punitive damages for bad faith required a culpable mental state and that was lacking here. The issue having been raised and definitively ruled upon, it was not forfeited. See City of St. Louis v. Praprotnik, 485 U.S. 112, 119-20 (1988); E.R. Squibb & Sons, Inc. v. Lloyd's & Cos., 241 F.3d 154, 167 (2d Cir. 2001). In granting the motion for JMOL, the district court explained that the case was "nothing more than a breach of a contract by an insurance company." Aplt. App. 654. At the close of the evidence, however, the case was submitted to the jury on three theories of liability including bad faith. The special verdict returned by the jury was predicated in part on bad faith. Aplt. App. 203-04,[2] 252. The evidentiary basis for the liability

---

[2] The bad faith contentions were as follows:

To establish the claim of Bad Faith on the part of State Farm, Sloan has the burden of proving any of the contentions set forth below:
1. State Farm acted in bad faith by failing to conduct a timely and fair investigation and evaluation of the claim; or
2. State Farm's denial of a $300,000.00 payment for the Shelton's claim was frivolous or unfounded; or
3. State Farm acted in bad faith with Sloan by failing to timely investigate, evaluate or pay Sloan's claim which is a bad faith breach of the duty to act honestly and in good faith in its performance of the insurance contract; or

portion of that special verdict has not been challenged in this appeal.

A.  Punitive Damages.

In light of the contentions of the parties, we posed the following question

for the New Mexico Supreme Court:

> Is an instruction for punitive damages required in every insurance bad faith case in which the plaintiff has produced evidence supporting compensatory damages as suggested by Uniform Jury Instruction 13-1718, N.M. R. Ann., UJI-Civ. (2002) (Directions for Use), or is the New Mexico Court of Appeals correct that subsequent New Mexico Supreme Court authority requires a culpable mental state beyond bad faith for imposition of punitive damages in insurance bad faith cases?    Teague-Strebeck Motors, Inc. v. Chrysler Ins. Co., 985 P.2d 1183, 1202-05 (N.M. Ct. App. 1999).

In re: Sloan, 320 F.3d at 1073.

The New Mexico Supreme Court accepted certification and overruled that part of

Teague-Strebeck that would require a culpable mental state for punitive damages

beyond that required for compensatory damages in bad faith cases.  See Sloan v.

State Farm Mut. Auto. Ins. Co. (In re: Sloan), No. 27,928, slip op. at 8 (N.M. Jan.

20, 2004) (copy attached).  In most cases, evidence of bad faith sufficient to

present the case to the jury will warrant an instruction on punitive damages

---

4.  State Farm acted in bad faith by failing to give Sloan's interests the same or equal consideration as their own interests.

Sloan also contends and has the burden of proving that such insurance bad faith was a proximate cause of his damages.

Aplt. App. 203-204, 767-768.

because it could support a culpable mental state. Id. at 8, 12. In the first-party context, an unreasonable denial or delay of a claim suffices for compensatory damages; if the denial or delay is also frivolous or unfounded, that demonstrates a culpable mental state sufficient to submit the issue of punitive damages to the jury. Id. at 10.

This case includes a bad-faith failure to settle claim. In such cases, an insurer's failure to investigate or competently defend may be evidence of bad faith. Id. at 11. But if there is evidence that the insurer exercised "dishonest judgment" and did not given equal consideration to its interests and that of its insured, a punitive damages instruction is warranted. Id. at 12. To these ends, the New Mexico Supreme Court has revised the instruction on punitive damages in bad faith cases to require a finding not only that compensatory damages are warranted, but also that "the conduct of the insurance company was in reckless disregard for the interests of the plaintiff, or was based on a dishonest judgment, or was otherwise malicious, willful, or wanton." Id. at 13 (revising N.M. UJI 13-1718).

Based upon what we now know about punitive damages and bad faith in New Mexico, we hold that the grant of JMOL on the punitive damages claim was error. The insurer has not cross-appealed from the judgment insofar as the sufficiency of the evidence supporting liability, including liability on the bad faith

claim.[3]  Indeed, Plaintiffs tell us that the insurer did not move for JMOL on these grounds either; the appendix does not appear to be to the contrary.  Aplt. Br. at 19-20.

The general rule announced by the New Mexico Supreme Court is that ordinarily a jury should decide the issue of punitive damages given a prima facie showing of bad faith sufficient to submit the case to the trier of fact.  Sloan, slip op. at 8.  Given the liability findings and the obvious factual dispute about the bona fides of the policy switch, we hold that a punitive damages instruction is now warranted.  A jury could conclude that the insurer may have exercised less than honest judgment or that it did not give equal consideration to its interests and that of the insured.  Given the doubt surrounding which policy applied and the insured's almost certain exposure to an excess judgment, a jury could conclude that the insured conducted an unfair balancing of interests in not settling for policy limits early on.  See Id. at 4 ("An insurer's frivolous or unfounded refusal to pay is the equivalent of a reckless disregard for the interests of the insured, and a dishonest or unfair balancing of interests is no less reprehensible than reckless disregard, which has historically justified an award of punitive damages.").

---

[3] The insurer does suggest other reasons why a new trial on liability ought to occur.

B.  Remittitur.

The next issue we must confront is the remittitur.  Ordinarily, a district court's grant of remittitur in a diversity case is reviewed for an abuse of discretion.  Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 419 (1996).  Plaintiffs do not argue that the district court was without power to order remittitur or a new trial.  Although the insurer challenges the remittitur as insufficient, both parties agree that the district court may not force the plaintiff to remit the excess portion of the judgment prior to allowing a plaintiff to choose between remittitur or a new trial on damages.

We agree with the parties.  The Seventh Amendment requires that a plaintiff be given the option of a new trial in lieu of remitting a portion of the jury's award.  Hetzel v. Prince William County, 523 U.S. 208, 211 (1998).  No judgment for a remittitur may be entered without the plaintiff's consent because the Seventh Amendment prohibits the court from substituting its judgment for that of the jury's regarding any issue of fact.  Id.; Gasperini, 518 U.S. at  433; see also Dimick v. Schiedt, 293 U.S. 474, 486-87 (1935).  Regardless of whether remittitur is proposed by the trial or appellate court, if the plaintiff does not consent to the remittitur, the district court has no alternative but to order a new trial on damages.  O'Gilvie v. Int'l Playtex, Inc., 821 F.2d 1438, 1447-48 (10th Cir. 1987) (citing Kennon v. Gilmer, 131 U.S. 22, 28-30 (1889); McKinnon v. City of Berwyn, 750

- 10 -

F.2d 1383 (7th Cir. 1984)).

Even if allowed to elect, Plaintiffs tell us that they will not accept remittitur as ordered by the district court. Aplt. Br. at 46; Aplt. Reply/Answer Br. at 17. Thus, the case must remanded for a new trial on damages, a remedy also sought by the insurer. Because of that, we do not address Defendant's arguments concerning double recovery and the adequacy of the remittitur amount.

C. Conduct of the Trial.

We must consider Defendant's point concerning the conduct of the trial to the extent Defendant seeks a new trial on liability. Essentially, Defendant contends that the judge's conduct considered in its totality deprived it of a fair trial. Defendant relies upon Rocha v. Great Am. Ins. Co., 850 F.2d 1095 (6th Cir. 1988):

> When the remarks of the judge during the course of a trial, or his manner of handling the trial, clearly indicate a hostility to one of the parties, or an unwarranted prejudgment of the merits of the case, or an alignment on the part of the Court with one of the parties for the purpose of furthering or supporting the contentions of such party, the judge indicates, whether consciously or not, a personal bias and prejudice which renders invalid any resulting judgment in favor of the party so favored.

Id. at 1100 (quoting Knapp v. Kinsey, 232 F.2d 458, 466 (6th Cir. 1956)) (emphasis omitted). Our review of this claim of judicial bias is for plain error because Defendant did not object on this basis. See Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificacion Familiar, 345 F.3d 15, 23-24 (1st Cir. 2003);

- 11 -

United States v. MacKay, 491 F.2d 616, 621-22 (10th Cir. 1973) (criminal context). And counsel must object. We recognize counsel's fear of antagonizing the trial judge (or possibly the jury) and thereby prejudicing his client's case, but a respectful objection may bring the matter before the trial court for possible corrective action and preserve the client's right to meaningful appellate review. As it stands, in civil cases, the plain error doctrine is sharply limited to errors that seriously affect the fairness, integrity or public reputation of judicial proceedings. Quigley v. Rosenthal, 327 F.3d 1044, 1063 (10th Cir. 2003).

Having reviewed the transcript, we are troubled by the process used by the court to inform counsel of how deposition testimony would be admitted. At a minimum, a variant procedure such as this one should be announced to **both** parties well in advance (not on the eve of trial), or be included in the pretrial order. At the same time, a review of the record indicates that deposition testimony was presented (albeit out of sequence and through excerpted portions of video or summaries presented by counsel) with counsel afforded the opportunity to object and have those objections ruled upon by the court. Suffice it to say that while we understand defense counsel's justifiable concern with the procedure, we cannot find that the fairness of the proceedings was substantially compromised.

Although a federal court has the right to comment on witness testimony, it must "exercise great care to maintain an impartial attitude and not become an

advocate for one of the parties to the litigation or mislead the jury." United States v. Sowards, 339 F.2d 401, 403 (10th Cir. 1964). We have reviewed the district court's comments on the evidence, Aplt. App. 442-443, 505, and the revelation of facts to the jury that the prior district judge may have ruled inadmissible, Aplt. App. 635-36, and find no plain error. A district court may attempt to clarify evidence, and it may revisit interlocutory evidentiary rulings made by another district judge. The district judge did not comment directly on the ultimate factual issue to be decided by the jury, nor add to the evidence, both of which would be improper. See Quercia v. United States, 289 U.S. 466, 471-72 (1933); Rocha, 850 F.2d at 1100; Sowards, 339 F.2d at 402-403.

Finally, we consider the district court's comments directed towards counsel's preparation, erudition, objections or lack of objection, and settlement. We certainly expect trial courts to treat counsel with respect, but given our standard of review in the absence of any objection, we do not find that the district court's comments in this case (directed towards both sides) rendered the trial unfair. The district court repeatedly expressed its views that the parties should settle the case (and what the case was worth), but it did this outside the presence of the jury. While we recognize that settlement is an appropriate topic for a pretrial conference, Fed. R. Civ. P. 16(c)(9), some cases cannot be settled and the parties' desire for a trial must be respected. As for the trial court's other

comments, we do not find them to be of such a character to have compromised the substantial rights of the insurer on the issue of liability. Both sides won and lost issues on that score. On remand, however, we think it would be best for the case to be reassigned.

AFFIRMED in part, REVERSED in part and REMANDED.

IN THE SUPREME COURT OF THE STATE OF NEW MEXICO
Opinion Number: 2004-NMSC-004
Filing Date: January 20, 2004

Docket No. 27,928

IN RE: JOSEPH
EDWARD SLOAN, Debtor

JOSEPH EDWARD SLOAN and
BYRON Z. MOLDO, Chapter 7

Trustee,

    Plaintiffs-Appellants
    and Cross-Appellees,


vs.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,
    Defendant-Appellee
    and Cross-Appellant.

**CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

Tucker Law Firm, P.C.
Steven L. Tucker
Santa Fe, NM

Eaton, Martinez, Hart & Valdez, P.C.
Steven J. Vogel
Albuquerque, NM

Vigil & Vigil, P.A.
Lisa K. Vigil
Albuquerque, NM

    for Appellants
    and Cross-Appellees

Guebert, Bruckner & Bootes, P.C.
Terry R. Guebert
Donald G. Bruckner Jr.
Ramona G. Bootes
Albuquerque, NM

    for Appellee
    and Cross-Appellant

OPINION

CHÁVEZ, Justice.

{1}     In this insurance-bad-faith case, arising from an insurance company's failure to settle a third-party lawsuit against its insured, we are asked to clarify whether a culpable mental state in addition to bad faith is required for the imposition of punitive damages. The following question was certified to us by the United States Court of Appeals for the Tenth Circuit, in accordance with Rule 12-607 NMRA 2003:

> Is an instruction for punitive damages required in every insurance bad faith case in which the plaintiff has produced evidence supporting compensatory damages as suggested by [UJI 13-1718 NMRA 2003], or is the New Mexico Court of Appeals correct that subsequent New Mexico Supreme Court authority requires a culpable mental state beyond bad faith for imposition of punitive damages in insurance bad faith cases? Teague-Strebeck Motors, Inc. v. Chrysler Ins. Co., [1999-NMCA-109, ¶¶ 76-90, 127 N.M. 603, 985 P.2d 1183].

Sloan v. State Farm Mut. Auto. Ins. Co. (In re Sloan), 320 F.3d 1073, 1073 (10th Cir. 2003).

{2}     Exercising jurisdiction under NMSA 1978, § 39-7-4 (1997), we answer that under New Mexico law, a punitive-damages instruction should be given to the jury in every common-law insurance-bad-faith case where the evidence supports a finding either (1) in failure-to-pay cases (those arising from a breach of the insurer's duty to timely investigate, evaluate, or pay an insured's claim in good faith), that the insurer failed or refused to pay a claim for reasons that were frivolous or unfounded, or (2) in failure-to-settle cases (those arising from a breach of the insurer's duty to settle a third-party claim against the insured in good faith), that the insurer's failure or refusal to settle was based on a dishonest or unfair balancing of interests. An insurer's frivolous or unfounded refusal to pay is the equivalent of a reckless disregard for the interests of the insured, and a dishonest or unfair balancing of interests is no less reprehensible than reckless disregard, which has historically justified an award of punitive damages. To ensure the jury has found a culpable mental state before awarding punitive damages, we modify UJI 13-1718 to reflect that punitive damages may only be awarded when the insurer's conduct was in

reckless disregard for the interests of the plaintiff, or was based on a dishonest

judgment, or was otherwise malicious, willful, or wanton.

I.

{3}     This matter comes to us in the course of an appeal from a jury trial in federal district court. The trial court granted Defendant State Farm's motion for judgment as a matter of law on Plaintiffs' claim for punitive damages against Defendant for bad-faith failure to settle. Sloan, 320 F.3d at 1074. The court submitted Plaintiffs' insurance-bad-faith claims to the jury without the instruction for punitive damages, UJI 13-1718 NMRA 2003. Even though Plaintiffs' claims primarily involved bad-faith failure to settle, the court included in its instructions to the jury both the bad-faith standard in a failure-to-settle action, that is, a dishonest or unfair balancing of interests (Jury Instruction No. 6, below), and the bad-faith standard in a first-party failure-to-pay action, that is, any frivolous or unfounded refusal to pay (Jury Instruction No. 8, below). Because the trial court gave the jury both instructions, we shall address the standard for punitive damages under both causes of action. The jury instructions relevant to Plaintiffs' bad-faith claim given at trial were:

> Jury Instruction No. 6
>
>     A liability insurance company has a duty to timely investigate and fairly evaluate the claim against its insured, and to accept reasonable settlement offers within policy limits.
> An insurance company's failure to conduct a competent investigation of the claim and to honestly and fairly balance its own interests and the interests of the insured in rejecting a settlement offer within policy limits is bad faith. If the company gives equal consideration to its own interests and the interests of the insured and based on honest judgment and adequate information does not settle the claim and proceeds to trial, it has acted in good faith.

See UJI 13-1704 NMRA 2003.

Jury Instruction No. 8
>     An insurance company acts in bad faith when it refuses to pay a claim of the policyholder for reasons which are frivolous or unfounded. An insurance company does not act in

- 2 -

bad faith by denying a claim for reasons which are reasonable under the terms of the policy.

In deciding whether to pay a claim, the insurance company must act reasonably under the circumstances to conduct a timely and fair investigation and evaluation of the claim.

A failure to timely investigate, evaluate or pay a claim is a bad faith breach of the duty to act honestly and in good faith in the performance of the insurance contract.

See UJI 13-1702 NMRA 2003.

{4}     The jury found that State Farm acted in bad faith in its dealings with Plaintiffs and that its bad faith proximately caused Plaintiffs' damages. The jury awarded Plaintiffs $600,000 in compensatory damages, later reduced to $540,000 on motion for remittitur. Plaintiffs appealed to the United States Court of Appeals for the Tenth Circuit, arguing that under New Mexico law, where there is sufficient evidence to submit an insurance-bad-faith claim to the jury, the jury must also receive an instruction on punitive damages. The Court of Appeals then certified the above question to us because it was unclear under New Mexico law whether in an insurance-bad-faith action, a finding of bad faith, without an additional finding of a culpable mental state, permitted an award of punitive damages.

{5}     This case presents an opportunity to assess the New Mexico Court of Appeals' holding in Teague-Strebeck that an award of punitive damages in an insurance-bad-faith case requires a culpable mental state in addition to the bad faith required for compensatory damages. See Teague-Strebeck Motors, Inc. v. Chrysler Ins. Co., 1999-NMCA-109, ¶ 78, 127 N.M. 603, 985 P.2d 1183. Although we denied the petition for certiorari in that case, such denial in itself expresses no opinion on the merits of the case. See State v. Breit, 1996-NMSC-067, ¶ 13, 122 N.M. 655, 930 P.2d 792. In our denial of certiorari in Teague-Strebeck, we avoided having to reconcile various statements we have made about the standard for punitive damages in insurance-bad-faith claims. We now take the opportunity to clarify the law on this point.

{6}     For the reasons that follow, we conclude that under New Mexico law, bad-faith conduct by an insurer typically involves a culpable mental state, and therefore the determination whether the bad faith evinced by a particular defendant warrants punitive damages is ordinarily a question for the jury to resolve. To the extent Teague-Strebeck would, in every insurance-bad-faith case, require a showing of an additional culpable mental state to permit an instruction on punitive damages, Teague-Strebeck is overruled. In so holding, we reaffirm our statement in Jessen v. National Excess Insurance Co., 108 N.M. 625, 627, 776 P.2d 1244, 1246 (1989) that "[b]ad faith supports punitive damages upon a finding of entitlement to compensatory damages." Accordingly, an instruction on punitive damages will ordinarily be given whenever the plaintiff's insurance-bad-faith claim is allowed to proceed to the jury. We do, however, somewhat limit the per se Jessen rule by affording the trial court the discretion to withhold a punitive-damages instruction in those rare instances in which the plaintiff has failed to advance any evidence tending to support an award of punitive damages.

## II.

{7}     Teague-Strebeck held that in insurance-bad-faith cases, New Mexico requires "the presence of aggravated conduct beyond that necessary to establish the basic cause of action in order to impose punitive damages." 1999-NMCA-109, ¶ 78. In reaching this conclusion, the Teague-Strebeck court analyzed two New Mexico Supreme Court rulings, Paiz v. State Farm Fire & Casualty Co., 118 N.M. 203, 880 P.2d 300 (1994) and Allsup's Convenience Stores, Inc. v. North River Insurance Co., 1999-NMSC-006, 127 N.M. 1, 976 P.2d 1, and determined from the language of those opinions that this Court intended to raise the standard of conduct required for an award of punitive damages in insurance-bad-faith cases. The Teague-Strebeck court determined that Paiz and Allsup's "superseded" the Jessen formulation and that "New Mexico now requires a showing of a culpable mental element to allow imposition of punitive damages." Teague-Strebeck, 1999-NMCA-109, ¶ 90.

{8}     In its original opinion, the Teague-Strebeck court affirmed the trial court's denial of the plaintiffs' claim for punitive damages arising from an insurance-bad-faith claim. Id. ¶¶ 70-73. The plaintiffs had argued that they were automatically entitled to punitive damages once compensatory damages were awarded and that the trial court therefore misapplied the legal standard for the award of punitive damages. Id. ¶¶ 71-72. Teague-Strebeck interpreted Paiz as requiring evidence of "an evil motive or a culpable mental state," in addition to bad faith, for a plaintiff to be entitled to punitive damages. Accordingly, it held the trial court did not abuse its discretion by refusing punitive damages. Id. ¶¶ 72-73.

{9}     In a separate published order on rehearing, appended to the original published opinion, the Teague-Strebeck court reinforced its initial holding, and again relied on Paiz and Allsup's for the proposition that "there is a real distinction between `bad faith' sufficient to support an award of compensatory damages and `bad faith' meriting exemplary damages." Id. ¶ 85. The Teague-Strebeck court also noted that UJI 13-1718, as it currently stands, "clearly contemplates the giving of a punitive damages instruction in every bad faith case submitted to a jury." Id. ¶ 82 n.1. The court then stated, "Given the holding in Paiz, and the language in Allsup's, upon which we rely, it would seem appropriate to reconsider this approach." Id.

{10}    As we reconsider UJI 13-1718 and the law of punitive damages in insurance-bad-faith claims, we first consider the analyses of Paiz and Allsup's in Teague-Strebeck.

A.

{11}    The Teague-Strebeck court began its analysis of Paiz by characterizing it as "a first party insurance-bad-faith case." 1999-NMCA-109, ¶ 79. Although Paiz began as an insurance-bad-faith case, by the time it reached the appellate courts it was reduced to a breach-of-contract case. At the trial level the plaintiffs had filed claims sounding in negligence, insurance bad faith, and breach of contract. Before submitting the case to the jury, however, the trial court directed a verdict against the plaintiffs with respect to their insurance-bad-faith claim. Paiz, 118 N.M. at 210, 880 P.2d at 307. The judge then submitted

- 5 -

the case to the jury under a breach-of-contract theory and under the plaintiffs' tort claims of "negligent misrepresentation, negligent investigation, and negligent delay in making payment." Id. at 206, 880 P.2d at 303. The jury returned a verdict in favor of the plaintiffs. "[T]he trial judge viewed the damages awarded as arising from State Farm's breach of contract instead of from any of Defendants' various negligent acts." Id. at 207, 880 P.2d at 304. We agreed, holding the jury's award was "grounded in breach of contract and not as damages for commission of one or more torts." Id.

{12}    Importantly, the claim of insurance bad faith was never raised as an issue on appeal. The plaintiffs did not appeal the directed verdict against them and therefore "conceded the correctness of the trial court's ruling" rejecting the bad-faith claim. Id. at 210, 880 P.2d at 307. "[C]ases are not authority for propositions not considered." Sangre de Cristo Dev. Corp. v. City of Santa Fe, 84 N.M. 343, 348, 503 P.2d 323, 328 (1972). We conclude Paiz ought not be relied upon in answering the certified question and was not dispositive in answering the question raised in Teague-Strebeck, because in Paiz this Court as well as the trial court focused on the contractual nature of the claims, rather than the degree to which they also sounded in tort.

{13}    Teague-Strebeck interprets Paiz as directly applicable to the tort of insurance bad faith. Teague-Strebeck, 1999-NMCA-109, ¶ 79. As we read Paiz, however, the holding is more narrowly drawn: "[W]e hold that such [a punitive-damages] award for a breach of contract may no longer be based solely on the breaching party's `gross negligence' in failing to perform the contract." Paiz, 118 N.M. at 204, 880 P.2d at 301. Because the tort of insurance bad faith is fundamentally distinct from a claim for breach of contract, and because insurance bad faith was not before the Court in that case, the opinion in Paiz is properly confined to the standard for punitive damages in a case for breach of contract.


## B.

{14}    The Teague-Strebeck court further advanced certain language from Allsup's as supporting its conclusion that this Court had raised the standard for punitive damages in

insurance-bad-faith cases. Allsup's involved an insurer's appeal of a jury award of punitive damages in an insurance-bad-faith claim. 1999-NMSC-006, ¶ 44. The insurer, North River, argued its due process rights were violated by a jury instruction suggesting the jury would merely have to find unreasonable conduct, as opposed to bad faith, in order to be held liable for punitive damages. Id. The instruction at issue there, essentially identical to UJI 13-1705 NMRA 2003, read:

> Under the "bad faith" claim, what is customarily done by those engaged in the insurance industry is evidence of whether the insurance company acted in good faith. However, the good faith of the insurance company is determined by the reasonableness of its conduct, whether such conduct is customary in the industry or not. Industry customs or standards are evidence of good or bad faith, but they are not conclusive.

Allsup's, 1999-NMSC-006, ¶ 44. North River interpreted this instruction as permitting the slightest unreasonableness to render an insurance company liable for punitive damages. Id. ¶ 45. This, North River argued, conflicted with our statement in McGinnis v. Honeywell, Inc., 110 N.M. 1, 9, 791 P.2d 452, 460 (1990) that a culpable mental state is a prerequisite to punitive damages.

{15}     To resolve the alleged conflict, we examined another jury instruction given at trial that stated in part, "Allsup's contends and has the burden of proving that any bad faith actions on the part of North River were malicious, reckless or wanton, and, therefore punitive damages should be awarded." 1999-NMSC-006, ¶ 46 (emphasis omitted). Reading the two instructions together, we concluded the jury must have found "malicious, reckless, or wanton conduct before it could award punitive damages." Id. Thus, Allsup's held, North River suffered no due process violation in the imposition of punitive damages. As we read Allsup's, its holding is strictly designed to resolve the question whether the jury was adequately instructed on the standard for punitive damages to survive a due process challenge. See id. ¶ 44. Accordingly, the presence of the second instruction on punitive damages enabled this Court to avoid the precise issue before us now, which is whether

a greater standard than that required for compensatory damages in insurance-bad-faith litigation is required before instructing on punitive damages. As a result of these considerations, we believe the Teague-Strebeck court, understandably, may have been misled by our opinion in Allsup's in regard to what we now hold is the correct analysis of New Mexico law on the standard for punitive damages in insurance-bad-faith cases.

{16}    In our current analysis, we conclude that Allsup's in fact supports our view that a punitive-damages instruction will ordinarily be given whenever the plaintiff is entitled to have the jury instructed on his or her insurance-bad-faith claim. In analyzing UJI 13-1705, the Allsup's court reasoned that "[w]hile bad faith and unreasonableness are not always the same thing, there is a certain point, determined by the jury, where unreasonableness becomes bad faith and punitive damages may be awarded." 1999-NMSC-006, ¶ 45 (emphasis added). In other words, there comes a point at which the insurer's conduct progresses from mere unreasonableness to a culpable mental state. Because the resolution of precisely where this point lies in each case depends on an assessment of the complex factual determinations surrounding the insurer's conduct and corresponding motives, such a question must ordinarily be reserved for the factfinder to resolve. As a general proposition, therefore, once a plaintiff has made a prima facie showing sufficient to submit his or her bad-faith claim to the jury, the determination whether the insurer's bad-faith conduct is deserving of punitive damages is for the jury to decide.

III.

{17}    Although we overrule Teague-Strebeck's holding that an award of punitive damages in such cases always requires evidence of culpable conduct beyond that necessary to establish basic liability, we agree with its statement that "`bad faith' may include a culpable mental state, but it is not necessarily so." 1999-NMCA-109, ¶ 85. We agree with this statement because of the manner in which the jury instructions for basic liability, UJI 13-1702 and 13-1704, are currently written. While these instructions properly convey the two standards we have previously articulated for a finding of a culpable mental state—a

- 8 -

frivolous or unfounded refusal to pay, see UJI 13-1702, and a failure to honestly and fairly balance the interests of the insured and its own, see UJI 13-1704—we acknowledge the instructions as written might be interpreted, in some circumstances, as permitting merely unreasonable conduct to support a finding of bad faith sufficient for an award of punitive damages. This is because these instructions, particularly UJI 13-1702, include concepts of reasonableness along with concepts which may evince a culpable mental state. Because punitive damages are imposed for the limited purposes of punishment and deterrence, a culpable mental state is a prerequisite to punitive damages. See McGinnis, 110 N.M. at 9, 791 P.2d at 460. While the unreasonable conduct described in these instructions may support an award of compensatory damages, such conduct does not support an award of punitive damages. Thus, there may be cases in which a plaintiff, despite having advanced evidence sufficient to submit his or her bad-faith failure-to-pay claim to the jury, nevertheless fails to make a prima facie showing that the insurer's conduct exhibited a culpable mental state.

{18}    Under New Mexico law, an insurer who fails to pay a first-party claim has acted in bad faith where its reasons for denying or delaying payment of the claim are frivolous or unfounded. See State Farm Gen. Ins. Co. v. Clifton, 86 N.M. 757, 759, 527 P.2d 798, 800 (1974). In Clifton we concluded that in order to recover damages in tort under this claim, there must be evidence of bad faith or a fraudulent scheme. Id. We further announced that "bad faith" means "any frivolous or unfounded refusal to pay." Id. (internal quotation marks and quoted authority omitted). We have defined "frivolous or unfounded" as meaning an arbitrary or baseless refusal to pay, lacking any support in the wording of the insurance policy or the circumstances surrounding the claim:

> "Unfounded" in this context does not mean "erroneous" or "incorrect"; it means essentially the same thing as "reckless disregard," in which the insurer "utterly fail[s] to exercise care for the interests of the insured in denying or delaying payment on an insurance policy." [Jessen, 108 N.M. at 628, 776 P.2d at 1247.] It means an utter or total lack of foundation for an

assertion of nonliability—an arbitrary or baseless refusal to pay, lacking any arguable support in the wording of the insurance policy or the circumstances surrounding the claim. It is synonymous with the word with which it is coupled: "frivolous."

Jackson Nat'l Life Ins. Co. v. Receconi, 113 N.M. 403, 419, 827 P.2d 118, 134 (1992). By refusing or delaying payment on a claim for reasons that are frivolous or unfounded, the insurer has acted with reckless disregard for the interests of the insured; such reckless disregard supports a claim for punitive damages.

{19}    We acknowledge, however, that the reasonableness of the insurer's conduct is generally an element of the jury's inquiry in determining whether compensatory damages should be awarded. For this reason, the bracketed second sentence of our jury instruction reads, "In deciding whether to pay a claim, the insurance company must act reasonably under the circumstances to conduct a timely and fair [investigation or evaluation] of the claim." UJI 13-1702 NMRA 2003. In failure-to-pay claims, therefore, a plaintiff under these circumstances might make a proper showing that the insurer acted unreasonably in denying or delaying a claim, entitling the plaintiff to compensatory damages, without having made a prima facie showing that the refusal to pay was frivolous or unfounded. In such circumstances, it is proper for the trial court to submit the plaintiff's bad-faith claim to the jury for consideration of an award of compensatory damages but withhold the punitive-damages instruction.

{20}    On the other hand, while New Mexico recognizes a common-law cause of action for bad-faith failure to settle within policy limits, we do not recognize a cause of action for negligent failure to settle. Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co., 102 N.M. 28, 690 P.2d 1022 (1984). To be entitled to recover for bad-faith failure to settle, a plaintiff must show that the insurer's refusal to settle was based on a dishonest judgment. By "dishonest judgment," we mean that an insurer has failed to honestly and fairly balance its own interests and the interests of the insured. An insurer cannot be partial to its own

interests, but rather must give the interests of its insured at least the same consideration or greater. See Lujan v. Gonzales, 84 N.M. 229, 236, 501 P.2d 673, 680 (Ct. App. 1972). In caring for the insured's interests, "the insurer should place itself in the shoes of the insured and conduct itself as though it alone were liable for the entire amount of the judgment." Dairyland Ins. Co. v. Herman, 1998-NMSC-005, ¶ 14, 124 N.M. 624, 954 P.2d 56 (internal quotation marks and quoted authority omitted). As we stated in Ambassador, "[The insurer's] decision not to settle should be an honest decision. It should be the result of the weighing of probabilities in a fair and honest way." 102 N.M. at 31, 690 P.2d at 1025 (quoted authorities omitted). This element of a dishonest or unfair balancing of interests is the key element in determining whether, in bad-faith failure-to-settle claims, the insurer's conduct merits punitive damages.

{21}     In such failure-to-settle claims, evidence of an insurer's negligence in researching a claim does not give rise to its own cause of action, but rather provides one possible means of demonstrating that an insurer acted in bad faith. As we said in Ambassador:

> [W]hen failure to settle the claim stems from a failure to properly investigate the claim or to become familiar with the applicable law, etc., then this is negligence in defending the suit (a duty expressly imposed upon the insurer under the insurance contract) and is strong evidence of bad faith in failing to settle. Here, basic standards of competency can be imposed, and the insurer is charged with knowledge of the duty owed to its insured. In this sense, such negligence becomes an element tending to prove bad faith, but not a cause of action in and of itself.

Id. at 31, 690 P.2d at 1025. Thus, if the insurer fails to meet "basic standards of competency" in investigating a claim or researching the applicable law, such conduct is "strong evidence" of bad faith, but is not in itself sufficient to support the plaintiff's bad-faith failure-to-settle claim.

{22}     In Ambassador, we predicated an insurer's honest judgment on its diligent, competent investigation of the claim:

> In order that [the insurer's decision whether to settle] be honest and intelligent it must be based upon a knowledge of the facts and circumstances upon which liability is predicated, and upon a knowledge of the nature and extent of the injuries so far as they reasonably can be ascertained.
>
> This requires the insurance company to make a diligent effort to ascertain the facts upon which only an intelligent and good-faith judgment may be predicated.

Id. (quoted authorities omitted). Our current uniform jury instruction reflects this standard of conduct when it states an insurer "has a duty to timely investigate and fairly evaluate the claim against its insured." UJI 13-1704 NMRA 2003. Nevertheless, we conclude the competence and timeliness of the insurer's investigation of the claim, while strong evidence of whether the insurer conducted itself fairly and in good faith, is not the dispositive element in a failure-to-settle claim. Even where the insurer's investigation was both competent and timely, the insurer is nevertheless liable for bad faith when its refusal to settle within policy limits is based on a dishonest judgment. In many respects, a dishonest judgment in these circumstances may be more reprehensible than where the insurer bases its decision not to settle on a negligent investigation. We conclude, therefore, in failure-to-settle cases, it is the insurer's failure to treat the insured honestly and in good faith, giving "equal consideration to its own interests and the interests of the insured," id., that renders the insurer liable for insurance bad faith and also merits an instruction on punitive damages.

## IV.

{23}    As a result of the foregoing analysis, we conclude that in most cases, the plaintiff's theory of bad faith, if proven, will logically also support punitive damages. To ensure, however, that a jury only awards punitive damages for bad-faith conduct manifesting a culpable mental state, and not for conduct that may fall short of such reprehensibility, we find it necessary to augment the punitive-damages instruction to reflect the requisite standard for a culpable mental state. Accordingly, we modify the first sentence of UJI 13-1718 to read as follows:

> If you find that plaintiff should recover compensatory damages for the bad faith actions of the insurance company, and you find that the conduct of the insurance company was in reckless disregard for the interests of the plaintiff, or was based on a dishonest judgment, or was otherwise malicious, willful, or wanton, then you may award punitive damages.

The trial court should include also the definitions of "dishonest judgment"—"a failure by the insurer to honestly and fairly balance its own interests and the interests of the insured"—along with the definitions of "reckless," "malicious," "willful," and "wanton." See UJI 13-1827 NMRA 2003. We believe this revised instruction will ensure the jury will award punitive damages only in those cases where the insurer's conduct is shown to have manifested a culpable mental state.

{24}    Finally, in answering as we do that a punitive-damages instruction will ordinarily be given every time the jury is instructed on the plaintiff's insurance-bad-faith claim, we acknowledge the prospect that in certain instances a plaintiff's evidence of bad-faith conduct, though sufficient to entitle the plaintiff to compensatory damages, may be, as a matter of law, insufficient to warrant a punitive-damages instruction. Where the trial court determines, based on the evidence marshaled at trial, that no reasonable jury could find the insurer's conduct to have manifested a culpable mental state, then the trial court may withhold the giving of a punitive-damages instruction. Accordingly, we also modify the Use Note for UJI 13-1718 to reflect that this instruction must ordinarily be given whenever UJI 13-1702, -1703, or -1704 is given; the instruction will not be given only in those circumstances in which the plaintiff fails to make a prima facie showing that the insurer's conduct exhibited a culpable mental state.

{25}    IT IS SO ORDERED.

_____

EDWARD L. CHÁVEZ, Justice

- 13 -

WE CONCUR:

_____
PETRA JIMENEZ MAES, Chief Justice


_____
PAMELA B. MINZNER, Justice


_____
PATRICIO M. SERNA, Justice


_____
RICHARD C. BOSSON, Justice