**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James B. KIMBALL, Defendant–Appellant.**

No. 94–3168.

United States Court of Appeals, Tenth Circuit.

Dec. 26, 1995.

S.A. (Tim) Scimeca, Wichita, Kansas, for Defendant–Appellant.

Robin D. Fowler, Assistant United States Attorney (Randall K. Rathbun, United States Attorney, District of Kansas, with him on the brief), Kansas City, Kansas, for Plaintiff–Appellee.

Before EBEL, LOGAN and BRISCOE, Circuit Judges.

LOGAN, Circuit Judge.

Defendant James B. Kimball appeals from his conviction after a jury trial on charges of bank robbery, in violation of 18 U.S.C. § 2113(a). He contends that (1) the district court erred in admitting evidence of his prior incarceration, (2) the in-court identification procedure was improperly suggestive and prejudicial, and (3) the district judge should have disqualified himself pursuant to 28 U.S.C. § 455(a) for lack of impartiality.

I

On June 28, 1993, a man robbed the First National Bank of Hutchinson, Kansas. He gave a bank employee a note threatening that if he was not given a specified amount of money he would detonate a bomb he had carried into the bank or another bomb he said was planted at a nearby shopping mall. After the robber escaped the bank with approximately $165,000 in cash police determined the bomb was fake.

The news media carried a description of the robber, and a parole office coordinator

familiar with defendant thought defendant matched the description. The officer alerted a lieutenant with the Kansas Department of Corrections who provided photographs of defendant to the Hutchinson police. Two bank employees, Debra Cowl and James Russell, identified defendant as the robber in a photo lineup a day or two after the robbery and again in court. At trial, the government established that defendant was paroled from prison in Hutchinson four days before the robbery, with approximately $372 and plans to live on his monthly veteran's pension of $648. Upon release, defendant stayed at the Astro Motel near the bank, and checked out shortly after the robbery. The description of the clothing he wore when released from prison matched that worn by the robber. Police recovered a cowboy hat in an alley near the bank similar to the description of the hat worn by the robber. Defendant was in a restaurant near the bank and his motel where he appeared in a blurry photograph taken by an amateur photographer shortly after the robbery.

Police recovered from defendant's motel room a tablet with an imprint of the robbery demand note, and a coffee pot marked with defendant's inmate number. The government also showed that two days before the robbery someone had purchased from the local Wal–Mart store the type of items used to make the fake bomb. Further, evidence suggested defendant took a taxi ride from his motel to that Wal–Mart the day the items were purchased.

Defendant never reported to his parole officer as required. Although he needed permission to leave the state, he chartered a flight from Wichita to Albuquerque under an alias which he continued to use in California, Colorado and New Mexico until his arrest in September 1993. The government established that defendant paid cash for travel, purchases, and living expenses during the three months following the robbery. Upon

his arrest, police recovered from him more than $27,000 in cash, jewelry, expensive clothing and luggage. Identity was the only significant issue at trial.

## II

We first turn to the issue whether the district court improperly admitted evidence of defendant's prior incarceration. We review evidentiary rulings for abuse of discretion. *United States v. Davis,* 40 F.3d 1069, 1073 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1806, 131 L.Ed.2d 732 (1995).[1]

The evidence of defendant's prior incarceration was introduced during testimony of three Department of Corrections employees. The testimony established where defendant resided upon his release from prison, what he was wearing, and how much money he had. It established that he failed to report to his probation officer, that he lacked permission to leave the State of Kansas, and that his small Veteran's Administration pension constituted his sole source of support. The testimony also included defendant's inmate number, that a Kansas parole office employee initially considered him to be a suspect in the robbery, and that the Kansas Department of Corrections forwarded photographs of defendant to the Hutchinson Police Department.

Defendant contends that the government failed to specifically articulate the purpose for offering this evidence and that the district court failed to comply with *Huddleston v. United States,* 485 U.S. 681, 686, 108 S.Ct. 1496, 1499–1500, 99 L.Ed.2d 771 (1988) (evidence must be offered for a proper purpose, be relevant, the probative value must substantially outweigh the potential unfair prejudice, and, if requested, the jury properly admonished regarding the purpose for admitting the evidence). The government responds that the evidence is admissible as

---

1. The government argues we should review only for plain error, contending that the defendant did not renew his objections after the adverse ruling on the government's motion in limine addressing this evidence. However, defense counsel did object before trial on grounds of prejudice, explained the basis for that position, and received a definitive ruling. Although the better practice would be for defense counsel to renew objections at trial, counsel was not required to do so here. *See United States v. Mejia–Alarcon,* 995 F.2d 982, 985–88 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 334, 126 L.Ed.2d 279 (1993). We thus review for abuse of discretion.

part of the *res gestae*, and also under Fed. R.Evid. 404(b).

Evidence of other crimes should not be suppressed when those facts come in as *res gestae*—"as part and parcel of the proof of the offense [ ] charged in the indictment." *United States v. Gano,* 560 F.2d 990, 993–93 (10th Cir.1977); *see also United States v. Masters,* 622 F.2d 83, 86 (4th Cir. 1980) (stating evidence is admissible when it provides the context for the crime, "is necessary to a 'full presentation' of the case," or is "appropriate in order 'to complete the story of the crime on trial by proving its immediate context or the "res gestae" ' "). Some of this evidence is admissible as *res gestae* : The evidence of defendant's inmate number on the coffee pot in the context of this being recovered in his motel room along with a tablet containing an imprint of the robbery demand note; and defendant's clothing worn at the time of his release from prison being identical to the clothing of the robber. It seems doubtful this evidence could have been presented appropriately without showing that defendant had been released from prison a few days before. That defendant fled Hutchinson without ever reporting to his probation officer as required, and left the state following the crime, would seem to "complete the story of the crime." *Masters,* 622 F.2d at 86.

Evidence admissible for one of the purposes specified in Fed.R.Evid. 404(b) and *res gestae* evidence are not always separated by a bright line. *See United States v. Cook,* 745 F.2d 1311, 1318 (10th Cir.1984), *cert. denied,* 469 U.S. 1220, 105 S.Ct. 1205, 84 L.Ed.2d 347 (1985). Evidence of defendant's early identification by the Department of Corrections employee as a possible suspect coupled with the Department forwarding photographs to the Hutchinson police, defendant's available cash, and his prospective means of support are not information items linked to the robbery itself. Although the government and the district court failed to precisely articulate the purpose of this evidence under Rule 404(b), this is subject to harmless error analysis. *United States v. Kendall,* 766 F.2d 1426 (10th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986),

establishes the government's and district court's duties, but if the purpose for admitting the evidence is apparent from the record and its admission is proper, the failure to follow *Kendall* is harmless error. *United States v. Birch,* 39 F.3d 1089, 1094 (10th Cir.1994).

Our reading of the entire transcript reveals the apparent purpose for offering this as Rule 404(b) evidence and its relevance. The testimony linking defendant to the motel room and the demand note was relevant to both identity and opportunity. The testimony about his clothing helped establish defendant's identity as the robber. His available cash and prospective means of support was relevant to motive. It is doubtful a proper foundation could have been laid for the evidence presented by Department of Corrections employees without showing defendant's prior incarceration and release shortly before the crime. Defendant offered no explanation for his lavish lifestyle following his release from prison.

We agree that the evidence's probative value outweighed any unfair prejudice to defendant. Further, the district court correctly admonished the jury as to the limited purpose for admitting the evidence. *See Huddleston,* 485 U.S. at 691–92, 108 S.Ct. at 1502. Any error by the district court in connection with this evidence was harmless in light of the overwhelming evidence of defendant's guilt.

### III

Defendant contends that the in-court identification by two eyewitnesses was so suggestive and unreliable that it denied him due process. Before trial, the prosecutor advised the eyewitnesses that the robber had grown a beard since the robbery. Defendant asserts that the district court should have granted a mistrial upon learning of this. We review de novo the ultimate issue of the constitutionality of identification procedures, although we review the underlying factual basis for the district court decision for clear error. *Archuleta v. Kerby,* 864 F.2d 709, 710–11 (10th Cir.), *cert. denied,* 490 U.S. 1084, 109 S.Ct. 2108, 104 L.Ed.2d 669 (1989).

Because defendant has not challenged the pretrial photo identification procedure, and focuses only on the in-court identification, we need not use the analysis of *Grubbs v. Hannigan*, 982 F.2d 1483, 1490 (10th Cir.1993) (applying *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–383, 34 L.Ed.2d 401 (1972)). Instead, we examine whether the in-court identification procedure was so suggestive that it denied defendant due process of law. We recognize that if there is a "very substantial likelihood of irreparable misidentification" under an in-court identification procedure, the district court should take the eyewitness credibility issue from the jury. *United States v. Robertson*, 19 F.3d 1318, 1323 (10th Cir.) (citations omitted), *cert. denied*, —— U.S. ——, 115 S.Ct. 271, 130 L.Ed.2d 189 (1994). In the instant case, however, defendant has not established any compelling circumstances establishing that the in-court identification procedure at his trial undermined the credibility of the government witnesses. Both bank employees, Cowl and Russell, unequivocally identified defendant in a photo lineup within days of the robbery. Both had previously and independently rejected another suspect apprehended the day of the robbery who evidently fit their description. Cowl received the demand note from defendant, had prolonged contact with him, and ample opportunity to observe and retain a mental picture of his features. Defense counsel cross-examined these witnesses regarding their in-court identification of defendant.

In *Romero v. Tansy*, 46 F.3d 1024, 1032 (10th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 2591, 132 L.Ed.2d 839 (1995), we addressed a factually similar case in which an unchallenged pretrial identification was followed by a somewhat suggestive in-court identification. There, at trial the defendant was the only Hispanic male "seated before the bar" and he had a hand tattoo that the eyewitness did not recall despite testimony that she observed him holding a gun for several minutes. We concluded that "[a]ny suggestiveness surrounding the courtroom identification was a matter to be considered by the jury in weighing the reliability of [the witness'] identification testimony." *Romero v. Tansy*, 46 F.3d at 1032. We cannot con-clude that the in-court identification procedure here was improperly suggestive or that it was so unreliable that it created a substantial likelihood of misidentification. *See Archuleta*, 864 F.2d at 711 (central issue is "whether under the totality of the circumstances the identification was unreliable").

## IV

■ Finally, defendant contends that the district judge should have recused himself because a reasonable person would doubt his impartiality. *See* 28 U.S.C. § 455(a). The party seeking recusal under § 455 (or 28 U.S.C. § 144 addressing pretrial recusal) must do so in a timely fashion. *United States v. Stenzel*, 49 F.3d 658, 661 (10th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 123, 133 L.Ed.2d 73 (1995). Defense counsel neither filed a pleading nor moved for recusal during trial. Therefore, we decide under a plain error standard whether the district judge was so biased or reasonably appeared to be so biased that we should order retrial with a different judge.

■ A reading of the entire trial transcript indicates that the few brief remarks upon which defense counsel relies in arguing for recusal are factual statements regarding defendant's criminal record and admonishments following defendant's pretrial outburst. Remarks made in the course of ordinary courtroom administration do not require recusal. *Liteky v. United States*, —— U.S. ——, ——, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994). As in *Liteky*, each remark noted by defendant was made in the course of judicial proceedings and neither relied upon knowledge acquired outside such proceedings, nor displayed deep-seated and unequivocal antagonism that would render fair judgment impossible. The court's stated intention that defendant "die in prison," VIII R. 22, 28, was an unfortunate comment but irrelevant to the outcome of sentencing because any sentence within the applicable range under the sentencing guidelines exceeded defendant's life expectancy. We are unable to conclude that a

reasonable person would doubt the impartiality of the district judge.

AFFIRMED.