**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MARC NICKL,

Defendant-Appellant.

No. 04-3499

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 04-CR-10003-MLB)

David H. Moses, Case, Moses, Zimmerman & Wilson, Wichita, Kansas (David K. Link, Gragert, Hiebert, Gray & Link, Wichita, Kansas, on the briefs), for Defendant-Appellant.

Debra L. Barnett, Assistant United States Attorney (Eric F. Melgren, United States Attorney, with her on the brief), Wichita, Kansas, for Plaintiff-Appellee.

Before **LUCERO**, **ANDERSON**, and **MURPHY**, Circuit Judges.

**MURPHY**, Circuit Judge.

A five-count superceding indictment charged Marc Nickl with various violations of Title 18 of the United States Code, including one count of conspiracy, two counts of bank fraud, one count of aiding and abetting a bank employee in the misapplication of bank funds, and one count of criminal forfeiture. A jury acquitted Nickl of the conspiracy charge, but found him guilty on charges of bank fraud and aiding and abetting. The district court sentenced Nickl to thirty-three months' imprisonment, required him to pay restitution in the amount of $896,978.97, and ordered him to forfeit and pay to the United States $543,000.

Nickl appeals his convictions on numerous grounds. First, Nickl alleges the district court testified as a witness in violation of Federal Rule of Evidence 605. Second, Nickl argues the court violated his right to due process by *sua sponte* modifying trial procedures and creating the appearance of bias by its remarks and failing to give a curative instruction. Third, Nickl contends the court erred when it excluded relevant and exculpatory evidence. Fourth, Nickl argues the evidence was insufficient to convict him. Fifth, Nickl claims he was forced to defend against multiplicitous charges. Finally, Nickl contends the superceding indictment failed to state a charge and deprived the district court of jurisdiction. In addition, Nickl claims he is entitled to resentencing under *United States v. Booker*, 125 S. Ct. 738 (2005).

This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We hold the district court committed prejudicial error in violation of Rule 605 and **reverse** and **remand** Nickl's aiding and abetting conviction. We further **remand** for resentencing in light of non-constitutional *Booker* error. The district court's other rulings are **affirmed**.

## I.    BACKGROUND

In the spring of 2002, an employee of the National Bank of Andover ("NBA") found a large number of processed customer checks and electronic return items in the desk of the bank's head bookkeeper, Paula Steward. An investigation by NBA officials, auditors, and the Federal Bureau of Investigation revealed that Steward appeared to be involved in a fraud scheme.

Steward paid customer checks with funds from NBA's accounts, then used the bank's return item and check clearing procedures to conceal the loss. Steward's fraudulent activities involved customer accounts belonging to James R. Spillman; Jesse R. Tate; Dr. John A. Brooks; and Meadowbrook Farm, Inc. Fraudulent check payments associated with the Brooks and Meadowbrook Farm accounts comprised the bulk of NBA's losses.

Meadowbrook Farms was Dr. Brooks' business. Appellant Marc Nickl worked as business manager for Meadowbrook Farms. Nickl also had a long-term, domestic relationship with Dr. Brooks. Nickl was an authorized signer on

both the Brooks and Meadowbrook Farm accounts (hereinafter the "Brooks Accounts"), and was responsible for interacting with NBA regarding the accounts.

Nickl called Paula Steward on a daily basis to check account balances and to inquire as to the status of individual checks. In the fall of 1999, Nickl began to ask Steward to hold certain checks for him until he could make a deposit to cover them. Steward complied with Nickl's requests. When Nickl's deposits were insufficient to pay for the checks and electronic transfers drawn on the Brooks Accounts, Steward used NBA funds to pay for certain of these items. Nickl and Steward discussed which checks to pay with deposited funds and which checks to hold. When Steward held checks, she marked them to be returned to the bank, then used the bank's funds to pay the returned checks. Steward placed these checks in her desk drawer.

Nickl and Steward continued this activity through the end of March 2002, when the bank discovered the checks and closed the Brooks Accounts. Subsequent investigation revealed Steward's and Nickl's actions in relation to the Brooks Accounts involved approximately 899 transactions and resulted in a loss to NBA of $896,978.97.

Nickl was indicted on one count of conspiracy in violation of 18 U.S.C. § 371, two counts of bank fraud in violation of 18 U.S.C. § 1344, one count of aiding and abetting a bank employee in the misapplication of bank funds in

violation of 18 U.S.C. §§ 656 and 2, and one count of criminal forfeiture pursuant to 18 U.S.C. § 982. After a jury trial, Nickl was acquitted of the conspiracy charge, but convicted on charges of bank fraud and aiding and abetting. The court sentenced Nickl to thirty-three months' imprisonment, the low end of the range indicated by the sentencing guidelines. Nickl was also ordered to pay restitution and forfeiture.

## II. ANALYSIS

### A. Nickl's Claims for Reversal of Convictions

#### 1. Rule 605 Claim

Nickl argues the presiding judge violated Rule 605 and committed prejudicial error when, during defense counsel's re-cross examination, the judge answered a question posed to a witness and voiced his opinion as to an ultimate factual issue. To find Nickl guilty of aiding and abetting, the prosecution was required to prove beyond a reasonable doubt that Steward acted with intent to injure or defraud NBA.[1] Accordingly, Steward's intent was an element of Nickl's

---

[1] Jury instructions required the government to prove beyond a reasonable doubt that "Paula Steward acted with intent to injure or defraud the bank." *See* Jury Instruction No. 14, Appellant's App. at 137. The government did not object to the jury instruction. The government must prove "each element of a crime as set out in a jury instruction to which it failed to object, even if the unchallenged jury instruction goes beyond the criminal statute's requirements." *United States v. Williams*, 376 F.3d 1048, 1051 (10th Cir. 2004). Thus, Steward's intent was an element of the crime of aiding and abetting.

-5-

crime. At trial, Steward gave conflicting testimony as to her intent to defraud NBA, first claiming she did not intend to injure the bank, then admitting she had pleaded guilty to having an intent to defraud and admitting she deceived NBA. On re-cross, defense counsel asked Steward if she pleaded guilty to having an intent to defraud just to "get it over with." Before Steward answered, the presiding judge interrupted and responded:

> Well, I'll answer that question because I took her plea. We go through a very specific lengthy inquiry, I go through it, and one of the elements for a [18 U.S.C. §] 656 charge is that the defendant acted with the intent to injure or defraud the bank. I would never have accepted her guilty plea unless she would have convinced me that's what she intended, and she did. And that's why I accepted her plea. And that's why she's in prison. Now, let's go on.

Defense counsel asked no more questions of Steward. Nickl contends the judge's remarks violated Rule 605 because they crossed the line from permissible commentary on the evidence to impermissible testimony by a presiding judge.

This court reviews *de novo* alleged violations of the Rules of Evidence. *United States v. Price*, 265 F.3d 1097, 1102-03 (10th Cir. 2001); *see also United States v. Paiva*, 892 F.2d 148, 158 n.8 (1st Cir. 1989) (noting court's review of violation of Rule 605 is not limited to plain error even when an appellant raises the issue for the first time on appeal). If a violation of Rule 605 has occurred, it is then necessary to consider whether the violation was prejudicial or harmless. *See Paiva*, 892 F.2d at 159 (first determining judge exceeded limitations on power

to comment, then holding error was harmless). "Under a harmless error analysis, the government bears the burden of demonstrating that the error was harmless beyond a reasonable doubt." *United States v. Summers*, 414 F.3d 1287, 1303 (10th Cir. 2005).

"The judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point." Fed. R. Evid. 605. While a judge may comment on proceedings, he may not assume the role of a witness. *Quercia v. United States*, 289 U.S. 466, 470 (1933). A judge "may analyze and dissect the evidence, but he may not either distort it or add to it." *Id.* Further, it is improper for a judge to comment directly on the ultimate factual issue to be decided by the jury. *Sloan v. State Farm Mut. Auto. Ins. Co.*, 360 F.3d 1220, 1226 (10th Cir. 2004). "If a judge exceeds the limitations on his power to comment and to question, such action may constitute prejudicial error and require reversal." *Paiva*, 892 F.2d at 159.

Rule 605's prohibition on judicial testimony eliminates difficult questions "which arise when the judge abandons the bench for the witness stand. Who rules on objections? Who compels him to answer? Can he rule impartially on the weight and admissibility of his own testimony? Can he be impeached or cross-examined effectively?" Fed. R. Evid. 605 advisory committee's note. Adherence to Rule 605 also prevents prejudice which may arise from a judge's testimony

because of the judge's influential position with the jury. *United States v. Pritchett*, 699 F.2d 317, 320 (6th Cir. 1983); *see also* Fed. R. Evid. 605 advisory committee's note.

In *Paiva*, a judge's explanation of drug field testing introduced facts which no witness had established. 892 F.2d at 159. The appellate court observed these remarks were "not merely summarization or comment on testimony." *Id.* Instead, they constituted additional testimony which "impermissibly exceeded the limitations on [the judge's] power to comment." *Id.*; *see also Quercia*, 289 U.S. at 471-72 (finding error when judge's comments were additions, not analysis); *Lillie v. United States*, 953 F.2d 1188, 1191 (10th Cir. 1992) (concluding judge's off-the-record view of accident scene introduced additional evidence such that judge became a witness in violation of Rule 605). Similarly, in *Pritchett*, when a prosecutor was unable to establish an individual was a convicted cocaine dealer, the presiding judge remarked that he had sentenced the individual. 699 F.2d at 318-19. The reviewing court characterized the judge's remark as "improper testimony" because it "confirmed what the prosecutor had unsuccessfully attempted to solicit" from the defendant himself. *Id.* at 320.

Here, as in *Pritchett* and *Paiva*, the presiding judge's commentary about Steward's intent to defraud the bank added new evidence which the prosecution

was otherwise unable to establish.[2]  Steward had given conflicting testimony as to her intent, and the judge added evidence when he told the jury he was convinced Steward intended to defraud the bank.  The judge's comment did not summarize Steward's testimony, it reshaped it.  It converted Steward's equivocations into a definitive answer on the question of intent and improperly addressed an ultimate factual issue to be decided by the jury.  *See Sloan*, 360 F.3d at 1226.  Accordingly, the comment constituted impermissible testimony in violation of Rule 605.

Because the remarks constituted witness testimony in violation of Rule 605, it is necessary to decide whether the testimony was prejudicial.  "Erroneous admission of evidence is harmless only if other competent evidence is 'sufficiently strong' to permit the conclusion that the improper evidence had no effect on the decision."  *Lillie*, 953 F.2d at 1192.  Error may also be harmless if,

---

[2]A prosecutor may properly use a codefendant or coconspirator's guilty plea to aid the jury in its assessment of the codefendant or coconspirator's credibility, but may not use the guilty plea as substantive evidence of a defendant's guilt. *United States v. Whitney*, 229 F.3d 1296, 1304 (10th Cir. 2000); *United States v. Baez*, 703 F.2d 453, 455 (10th Cir. 1983).  Here, Steward's intent to defraud was an indispensable element of Nickl's crime.  The prosecution was free to use Steward's guilty plea to bolster Steward's credibility.  It was not, however, free to use the plea for the purpose of establishing intent to defraud; such a purpose would have been impermissible use of a plea to establish substantive evidence of a defendant's guilt.  Thus, when the presiding judge remarked that Steward's guilty plea established she had the intent to defraud the bank, he introduced new evidence which the government was otherwise unable to establish.

despite the judge's comments, jurors would still feel free to draw their own conclusions about the factual issue to be decided. *United States v. Masters*, 450 F.2d 866, 868 (9th Cir. 1971). In some cases, a judge may be able to correct an improper statement with an appropriate curative instruction. *United States v. Munz*, 542 F.2d 1382, 1387-88 (10th Cir. 1976).

Here, the remarks on the issue of Steward's intent were not harmless. First, the evidence Steward intended to commit bank fraud was not "sufficiently strong to permit the conclusion" that the judge's remarks had no effect upon the jury's decision. *Lillie*, 953 F.3d at 1192 (quotation omitted). The *Paiva* court held the presiding judge's additional testimony was harmless error when it was of minor importance to the prosecution's case and constituted only a fraction of the evidence introduced at trial. 892 F.2d at 159. In the instant case, however, there was not an abundance of evidence on Steward's intent to defraud the bank. Steward gave conflicting testimony on the issue, once admitting she pleaded guilty to having an intent to defraud, but twice informing the jury she *did not* intend to defraud the bank. Other than Steward's conflicting testimony, the government's limited harmlessness analysis does not reference any evidence of Steward's intent to defraud, the very element it had to prove to establish Nickl's guilt. The prosecution was not permitted to use Steward's guilty plea for the purpose of establishing she had the intent to defraud NBA, because Steward's

intent to defraud was an element of Nickl's crime. *See United States v. Whitney*, 229 F.3d 1296, 1304 (10th Cir. 2000) (holding coconspirator's guilty plea is admissible as an aid to the jury's assessment of witness credibility, but not as substantive evidence of a defendant's guilt). Thus, when the presiding judge remarked that Steward's guilty plea convinced him Steward had the intent to defraud, he introduced evidence the government was not able to otherwise establish. In contrast to *Paiva*, jurors did not have an abundance of other evidence on the issue of Steward's intent, and the presiding judge's remarks almost certainly affected the jury's conclusions.

Second, the remarks left little room for jurors to draw their own conclusions as to Steward's intent. In *Masters*, a judge responded to a perceived attack on his court's integrity with testimony favorable to a prosecution witness. 450 F.2d at 868. Viewing the comments in context, the appellate court found no error. *Id*. Although the testimony carried some risk of unfairly enhancing a witness' credibility, a "jury could still have distrusted the witness had it been so inclined, despite the judge's comments." *Id*. In the instant case, given the context of the remarks, the opposite conclusion is compelled. Unlike the jurors in *Masters*, jurors in this case would have felt obliged to accept the judge's testimony on Steward's intent when he answered in place of Steward and emphatically stated he was convinced Steward intended to defraud the bank.

"The influence of the trial judge on the jury is necessarily and properly of great weight and his lightest word or intimation is received with deference, and may prove controlling." *United States v. Sowards*, 339 F.2d 401, 403 (10th Cir. 1964) (quotation omitted); *see Quercia*, 289 U.S. at 470. "[A] trial judge's position before a jury is overpowering. His position makes his slightest action of great weight with the jury." *United States v. Hickman*, 592 F.2d 931, 933 (6th Cir. 1979) (quotations omitted). Here, the district court's remarks were more blunt instructions than light words or intimations. Moreover, the court did not allow Steward to answer the question posed to her, nor did it allow her to react to the court's remarks. The judge's forceful comments were the last word heard by the jury regarding Steward's intent, and jurors would have felt compelled to agree with the judge's conclusion on the issue.

Finally, the judge offered no specific curative instruction which could have overcome his error. In *Munz*, a trial judge posited a lengthy hypothetical about a man who was in a situation similar to that of the defendant, but who had committed additional crimes. 542 F.2d at 1386. The judge recognized the added offenses in the hypothetical may have prejudiced jurors against the defendant, and gave a "specific, emphatic, and prompt" curative instruction. *Id*. at 1387. The *Munz* court concluded this curative instruction was sufficient to overcome the errors introduced by the trial judge's hypothetical. *Id*. at 1388. Here, the

-12-

presiding judge offered no specific curative instruction, although he did include among his general instructions to the jury a caution that jurors should disregard any remark suggesting how he would have decided any issue in the case. This general instruction was neither prompt, specific, nor emphatic. It reached the jury only at the end of the trial and did not refer with specificity to the judge's pointed remarks that he was convinced Steward intended to defraud the bank. As such, it did not overcome the prejudice caused by the court's improper testimony.

The government has failed to meet its burden to establish the presiding judge's remarks concerning Steward's intent to defraud the bank constitute harmless error. Accordingly, Nickl's aiding and abetting conviction is reversed and remanded.

### 2. Due Process Claims

#### (a) Modification of Trial Procedure

Nickl claims the court violated his right to due process when, on the first day of trial, it announced it would modify trial procedures by bifurcating the trial into distinct guilt and sentencing phases. Nickl further claims the court violated his due process rights when it amended the superceding indictment by removing certain language relevant to a sentencing enhancement.

After the Supreme Court foreshadowed changes in the application of federal sentencing guidelines in *Blakely v. Washington*, 124 S. Ct. 2531 (2004),[3] the government in Nickl's case filed a superseding indictment which alleged new facts in an effort to support sentencing enhancements. The new indictment charged Nickl with the same offenses as before, but also alleged Nickl's crimes (1) "involved more than minimal planning," and (2) "jeopardized the safety and soundness of NBA."

Nickl requested a status conference and a continuance to frame and brief the issues raised by the new indictment. The court denied the continuance. On the first day of trial, the district court announced it would address sentencing issues by bifurcating the trial into distinct guilt and penalty phases. If Nickl was found guilty, the trial would move on to a sentencing phase and the jury would determine issues relating to the forfeiture charge and sentencing, including the allegation that Nickl jeopardized the safety and soundness of NBA. At the same time, the court declared it would excise from the superceding indictment the allegation that the fraud scheme involved "more than minimal planning," because

---

[3]After Nickl was indicted, but before his trial started, the Supreme Court decided *Blakely v. Washington*. 124 S. Ct. 2531 (2004). *Blakely* held the Sixth Amendment prohibited a judge from imposing an enhanced sentence under Washington state's Sentencing Reform Act unless the facts used to support the sentence enhancement were charged in an indictment and either admitted by the defendant or submitted to a jury and proved beyond a reasonable doubt. *Id*. at 2536-37.

-14-

it was no longer grounds for a sentence enhancement under the sentencing guidelines. After hearing the evidence, the jury found Nickl did not substantially jeopardize the safety and soundness of NBA.

Nickl argues the court's modification of trial procedures and amendment of the superceding indictment violated his right to due process because the court's actions were "without notice to the parties or legal authority." This court reviews *de novo* whether a defendant's due process rights have been violated. *United States v. Walters*, 269 F.3d 1207, 1215 (10th Cir. 2001). "To establish a due process violation, an individual must show he or she has sustained prejudice as a result of the allegedly insufficient notice." *Long v. Bd. of Governors of the Fed. Reserve Sys.*, 117 F.3d 1145, 1158 (10th Cir. 1997).

Nickl has not suggested or demonstrated he was in any way prejudiced by the court's decision to bifurcate the trial. Nickl notes bifurcation delayed mention of the "safety and soundness" sentencing factor until the penalty phase of the trial, but does not indicate how such delay harmed him. Indeed, Nickl cannot identify harm because the jury specifically acquitted Nickl of jeopardizing NBA's "safety and soundness." Finally, Nickl cannot show he was harmed by the court's decision to excise the "more than minimal planning" sentencing factor from the indictment. The court's decision eliminated one of the grounds for sentence enhancement, and Nickl could have only benefitted from the decision. Because

Nickl cannot demonstrate he was prejudiced by the district court's modifications to the trial procedures, his due process claim fails.

### (b)     Appearance of Bias

Nickl contends the district court's decisions and actions during trial created an appearance of bias which violated Nickl's right to due process.  More specifically, Nickl alleges the presiding judge was obliged to recuse himself under 28 U.S.C § 455, and the judge's failure to do so warrants reversal or a new trial.

First, Nickl alleges the court analogized homosexuality to illegal drug use during *voir dire*, thereby creating an appearance of bias.  When a juror alerted the court that same sex relationships had caused his family to experience problems, the court noted the juror's situation was "no different in many respects than jurors in drug cases who . . . if they've used drugs, if their family members use illegal drugs, if that's caused a problem."  When another juror expressed a similar concern, the court responded by saying, "I don't see anything different in your [opposition to homosexuality] . . . than people who are opposed to illegal drugs but who serve on juries all the time."

Second, Nickl alleges an appearance of bias when the judge interrupted the prosecution's closing argument to rebuke Dr. Brooks and eject him from the

-16-

courtroom.[4]  Nickl argues jurors and spectators associated Dr. Brooks with Nickl because Dr. Brooks was Nickl's domestic partner, employer, and witness. Accordingly, Nickl concludes the court's harsh treatment of Dr. Brooks created an appearance of bias against Nickl himself.

Third, Nickl argues the court's refusal to give an additional jury instruction, and the manner in which it did so, created an appearance of bias.  At the sidebar, Nickl asked the judge to instruct the jury that neither Dr. Brooks' behavior, nor the court's reprimand and ejection of him, should cause jurors to draw any negative inferences against Nickl.  The court refused to give the instruction, commenting that Dr. Brooks "is in effect [Nickl's] wife."

Fourth, Nickl alleges the judge created an appearance of bias when, as described in Part II.A.1 above, he interrupted the defense's re-cross of Steward to answer a question for the witness.  Similarly, Nickl claims the court created an appearance of bias when it repeatedly questioned another witness, Emery Goad, in much the same way Goad had been questioned by the government.  Such active participation in the questioning of witnesses, argues Nickl, creates the risk the jury will perceive the judge as an advocate and permits an inference of bias.

---

[4]During the government's rebuttal closing, the court interrupted and stated: "Just a minute.  Dr. Brooks, you leave the courtroom.  You've been sitting back there shaking your head and making faces and I haven't said anything about it. But, by golly, you have–my patience with you is over.  Don't you ever come back here."

Finally, Nickl alleges the court's denial of the defense motions to continue the trial and brief *Blakely* issues created an appearance of bias.

A federal judge must recuse himself from "any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Normally, a party alleging judicial bias should move for recusal, and "must do so in a timely fashion." *United States. v. Kimball*, 73 F.3d 269, 273 (10th Cir. 1995). Although Nickl included a bias argument in his motion for a new trial, he failed to file a pleading, object, or move for recusal during trial. Accordingly, this court employs a plain error standard[5] to decide whether the impartiality of the district court was so suspect as to require a new trial. *Id*. "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc) (quotation omitted).

---

[5]In *United States v. Pearson*, grounds for a defendant's bias claim arose in part from the district court's remarks at sentencing in denying the defendant's motion for a new trial. 203 F.3d 1243, 1276 (10th Cir. 2000). Under those narrow circumstances, we considered the defendant's request for recusal in the first instance, even when no motion for recusal was filed with the district court. *Id*. Here, Nickl's bias claim is unaccompanied by circumstances which would warrant a *Pearson*-type exception. Accordingly, we examine the question of bias using a plain error standard. *United States v. Kimball*, 73 F.3d 269, 273 (10th Cir. 1995).

"The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). To demonstrate a violation of due process because of judicial bias, a claimant must show either actual bias or an appearance of bias. *Phelps v. Hamilton*, 122 F.3d 1309, 1323 (10th Cir. 1997). A judge must recuse himself "if sufficient factual grounds exist to cause a reasonable, objective person, knowing all the relevant facts, to question the judge's impartiality." *United States v. Pearson*, 203 F.3d 1243, 1277 (10th Cir. 2000). A judge's actual state of mind or prejudice is not at issue. *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993). "The standard is purely objective," and "[t]he inquiry is limited to outward manifestations and reasonable inferences drawn therefrom." *Id.*

Ordinarily, when a judge's words or actions are motivated by events originating within the context of judicial proceedings, they are insulated from charges of bias. *Liteky v. United States*, 510 U.S. 540, 554-56 (1994). Thus, "adverse rulings cannot in themselves form the appropriate grounds for disqualification." *Green v. Branson*, 108 F.3d 1296, 1305 (10th Cir. 1997) (quotation omitted). Likewise, "[a] judge's ordinary efforts at courtroom administration," even if "stern and short-tempered," are "immune" from charges of bias and partiality. *Liteky*, 510 U.S. at 556. Although a judge's remarks

during the course of a trial may be "critical," "disapproving," or "hostile" to a party, usually they will not support a partiality charge. *Id.* at 555.

Recusal may be appropriate, however, when a judge's decisions, opinions, or remarks stem from an extrajudicial source–a source outside judicial proceedings. *Id.* at 554-55. Recusal is necessary when a judge's actions or comments "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* at 555. Courts have found an impermissible level of bias when a judge's remarks or actions reveal he has prejudged the guilt of a defendant. For example, the Court of Appeals for the Third Circuit concluded a judge should have recused himself when his stated object in a case was "to get back to the public that which was taken from it as a result of the fraudulent activities of this defendant and others." *In re Antar*, 71 F.3d 97, 100, 102 (3d Cir. 1995).

Here, Nickl bases his bias claim in part on the court's refusal to grant defense counsel's requests for a continuance to brief *Blakely* issues and for an additional jury instruction regarding its reprimand and ejection of Dr. Brooks. These are merely adverse rulings, and do not in themselves support a bias charge. *Green*, 108 F.3d at 1305. They are grounds for appeal, not recusal. *Liteky*, 510 U.S. at 555. Likewise, the court's reprimand and ejection of Dr. Brooks from the courtroom, its interruption of witness testimony, and its questioning of witnesses

from the bench all qualify as attempts at courtroom administration. None of these events evidences "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id*. Accordingly, they are "immune" from charges of bias or prejudice. *Id*. at 556. These actions do not constitute error.

Nickl's allegations that the judge's statements during *voir dire* analogized homosexuality to illegal drug use and the judge's characterization of Dr. Brooks as the defendant's "wife" are also insufficient to warrant recusal. The comments, while arguably insensitive or inappropriate, do not suggest "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id*. at 555. This is particularly true when the statements are placed in context. For example, when the court compared homosexuality to illegal drug use, it also informed potential jurors that "no case, particularly a criminal case, is ever a place where jurors are called upon to make moral judgments about people." When the court referred to Dr. Brooks as Nickl's "wife," it did so at sidebar, after it had ejected Dr. Brooks from the courtroom. Again, the district court's comments do not constitute error.

The court's rulings, statements, and actions during trial neither prejudged Nickl, nor constituted "injudicious damnation" of him. *Pearson*, 203 F.3d at 1278. The court was at times critical or disapproving, but it did not display a deep-seated antagonism which would make fair judgment impossible. Viewing the challenged comments and actions within the context of the entire proceeding,

recusal was not warranted and Nickl's right to due process was not violated. Because the district court committed no error, Nickl's claim fails under the first prong of the plain error test.

### 3. Exclusion of Evidence Claims

#### (a) Exclusion of testimony on the Spillman and Tate accounts

Nickl argues the district court abused its discretion when it did not allow evidence that Steward's fraudulent activities involved accounts other than the Brooks Accounts. Nickl argues Steward's conduct in relation to the Spillman and Tate accounts is relevant to the issue of Steward's intent to defraud the bank. Steward's intent, however, is only germane to Nickl's conspiracy and aiding and abetting charges. Because the jury acquitted Nickl of the conspiracy charge, and because we reverse Nickl's aiding and abetting charge on other grounds, it is unnecessary to address whether the district court erred in excluding evidence of the Spillman and Tate accounts.

#### (b) Exclusion of Evidence from Bank Investigation

Nickl alleges the court erred when it concluded, under Federal Rule of Evidence 403 ("Rule 403"), that allegedly exculpatory evidence from an independent bank investigation was more likely to confuse than enlighten the jury. On cross-examination, defense counsel asked Sharon Smith, a C.P.A. who worked for an independent firm which investigated Steward's activities at NBA,

whether her firm's investigation had revealed any evidence of fraud on the part of bank customers. The prosecution objected. Outside the presence of the jury, Smith stated her firm uncovered no evidence of customer fraud, but noted the investigation was not directed at uncovering customer fraud. The court excluded this portion of Smith's testimony under Rule 403, finding it was more likely to confuse than edify the jury. Nickl contests the district court's exclusion of evidence.

"A district court has broad discretion in balancing the probative value of evidence against its potential prejudicial effect, and will be reversed only on a showing of abuse of that discretion." *United States v. Scarborough*, 128 F.3d 1373, 1378 (10th Cir. 1997). A trial court abuses its discretion when it makes a "clear error of judgment," "exceed[s] the bounds of permissible choice," or when its decision is "arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment." *Moothart v. Bell*, 21 F.3d 1499, 1504-05 (10th Cir. 1999) (quotations omitted).

Rule 403 allows a trial judge to exclude relevant evidence whose probative value is substantially outweighed by its potential to, *inter alia*, mislead the jury or confuse the issues. Fed. R. Evid. 403. A court properly excludes evidence under Rule 403 if, after balancing its probative value against the "competing considerations set forth in the rule," the court determines the "costs of the

evidence outweigh its benefits." *S.E.C. v. Peters*, 978 F.2d 1162, 1171 (10th Cir. 1992) (quotations omitted).

In making its Rule 403 determination, the district court correctly observed uncovering customer fraud was not the objective of Smith's investigation. It reasonably concluded there would be little probative value in the proffered testimony: a jury would gain little understanding from testimony that an investigation not aimed at uncovering customer fraud did not, in fact, uncover any customer fraud. The court further determined allowing such testimony could confuse or mislead the jury on the issue of Nickl's intent to defraud the bank. Given this rationale, we are unable to conclude the decision to exclude this portion of Smith's testimony was arbitrary, capricious, or manifestly unreasonable.

4. *Other Arguments for Overturning Conviction or Granting New Trial*

(a) *Insufficient Evidence*

Nickl argues there was insufficient evidence to convince a reasonable juror that Nickl possessed criminal intent. After the prosecution's case, and again after the trial, Nickl moved for a judgment of acquittal. The court denied both motions. Nickl contends the court erred in denying these motions, and that his convictions should be reversed.

To convict Nickl of bank fraud, the jury had to be convinced beyond a reasonable doubt Nickl possessed the intent to defraud or injure the bank. Nickl claims evidence of his intent was limited to Steward's testimony. Steward told the jury Nickl never asked her to use bank funds to pay checks drawn on the Brooks Accounts and Nickl was not aware of the process by which Steward paid the checks. This limited evidence, Nickl argues, is insufficient to establish beyond a reasonable doubt that Nickl intended to defraud or injure NBA.

This court reviews *de novo* the sufficiency of the evidence to support a criminal conviction. *United States v. Higgins*, 282 F.3d 1261, 1274 (10th Cir. 2002). "Evidence is sufficient to support a conviction if a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the government." *United States v. Nelson*, 383 F.3d 1227, 1229 (10th Cir. 2004). More often than not, intent is proved by circumstantial evidence. *United States v. Nguyen*, 413 F.3d 1170, 1175 (10th Cir. 2005).

Here, Nickl is incorrect in asserting Steward's testimony is the only evidence relevant to Nickl's intent to defraud. A jury may–and often must–consider circumstantial evidence when determining whether a defendant had the requisite intent. *Id.* In this case, evidence showed Nickl's actions included nearly 900 transactions totaling nearly $900,000 over a period of thirty months.

-25-

Further, Nickl discussed with Steward which checks to pay and which checks to "hold." He also knew Steward was engaging in improper activity contrary to NBA policy. Given this circumstantial evidence, there is no doubt a reasonable juror could have concluded Nickl intended to defraud or injure NBA.

### (b)    Multiplicitous Charges

Nickl asserts he was forced to defend against multiplicitous charges because, under the circumstances, the government's charges of conspiracy and aiding and abetting were indistinguishable. This court reviews *de novo* claims of multiplicity. *United States v. McIntosh*, 124 F.3d 1330, 1336 (10th Cir. 1997). The government may submit multiplicitous charges to the jury, but if a defendant is convicted of both charges, the district court must vacate one of the convictions. *See Ball v. United States*, 470 U.S. 856, 864-65 (1985). Here, a jury acquitted Nickl of the conspiracy count, and we reverse Nickl's aiding and abetting conviction on other grounds. Therefore, the conspiracy and aiding and abetting charges did not result in multiplicitous convictions, and Nickl's claim fails.

### (c)    Failure to State a Charge

Nickl contends the government's superceding indictment failed to state a charge and therefore deprived the district court of jurisdiction. As noted above, after the Supreme Court decided *Blakely*, the government obtained a superceding indictment which added language relevant to sentence enhancements under the

-26-

United States Sentencing Guidelines. Nickl argues the sentencing language did not address criminal conduct as defined by Congress and thus had no place in an indictment. He not only contends the district court has no jurisdiction over matters asserted in the sentencing language, he claims the addition of the language to the indictment deprived the district court of jurisdiction over the indictment in general.

Nickl's claim has no merit. "A part of the indictment unnecessary to and independent of the allegations of the offense proved may normally be treated as a useless averment that may be ignored." *United States v. Miller*, 471 U.S. 130, 136 (1985) (quotations omitted); *see also United States v. Harper*, 579 F.2d 1235, 1239-40 (10th Cir. 1978) ("When the language of the indictment goes beyond alleging the elements of the offense, it is mere surplusage and such surplusage need not be proved."). Moreover, a defective indictment does not deprive a court of jurisdiction. *United States v. Cotton*, 535 U.S. 625, 631 (2002).

B.     *Nickl's Resentencing Claim*

Nickl argues his case must be remanded for resentencing due to prejudicial, non-constitutional *Booker* error. He contends this court must presume prejudice because the district court sentenced at the bottom end of the guidelines range and might have imposed a lower sentence had it not considered the sentencing guidelines to be mandatory. From the record in this case, it is uncertain whether

the district court would impose the same sentence under a discretionary guidelines scheme as it did under a mandatory guidelines scheme. Accordingly, we cannot say the district court's error was harmless, and we remand for resentencing.

After Nickl was convicted, a presentence investigation report concluded Nickl's offenses warranted a range of imprisonment of thirty-three to forty-one months under the sentencing guidelines. Nickl moved for a downward departure, arguing, *inter alia*, that incarceration would diminish his ability to pay restitution.

The district court denied Nickl's motion for downward departure. When it evaluated Nickl's restitution argument, the district court concluded it lacked the discretion to grant a downward departure. The court applied the sentencing guidelines and sentenced Nickl to thirty-three months, the bottom end of the guidelines range. The district court characterized the sentence as "just" and "fair," but did not announce explicitly it would impose the same sentence if the guidelines were not mandatory.

After the district court sentenced Nickl, the Supreme Court in *Booker* invalidated the mandatory application of the sentencing guidelines and instructed district courts to consult the guidelines in an advisory fashion. 125 S. Ct. at 756. Accordingly, a sentence imposed through mandatory application of the guidelines is non-constitutional *Booker* error. *Gonzalez-Huerta*, 403 F.3d at 731-32. Here,

the district court committed non-constitutional *Booker* error because it viewed the sentencing guidelines as mandatory when it sentenced Nickl.

This court reviews for harmless error when, as here, a defendant has properly raised a non-constitutional *Booker* claim below. *United States v. Ollson*, 413 F.3d 1119, 1120 (10th Cir. 2005). Applying harmless error analysis to a preserved non-constitutional *Booker* error, this court reviews the record as a whole and asks whether the error affected the district court's selection of the sentence imposed. *United States v. Labastida-Segura*, 396 F.3d 1140, 1143 (10th Cir. 2005). "In non-constitutional harmless error cases, the government bears the burden of demonstrating, by a preponderance of the evidence, that the substantial rights of the defendant were not affected." *United States v. Glover*, 413 F.3d 1206, 1210 (10th Cir. 2005).

Faced with non-constitutional *Booker* error in *Labastida-Segura*, this court remanded for resentencing when the trial court sentenced the defendant to the bottom end of the guidelines range. 396 F.3d at 1142-43. There was no concrete indication the district court would impose the same sentence on remand, viewing the guidelines as advisory instead of mandatory. *Cf. United States v. Serrano-Dominguez*, 406 F.3d 1221, 1223-24 (10th Cir. 2005) (concluding non-constitutional *Booker* error was harmless when the district court's announcement of an alternative sentence not based on sentencing guidelines made clear it would

have imposed same sentence on remand). Because this court found itself "in the zone of speculation and conjecture," it concluded the non-constitutional *Booker* error was not harmless. *Labastida-Segura*, 396 F.3d at 1143.

In contrast, non-constitutional *Booker* error was harmless in *Ollson*. 413 F.3d at 1121. There, the district court exercised its discretion when it granted a motion for downward departure and determined what degree of departure was appropriate. *Id*. at 1120. "[T]he district court had undoubted discretion to reduce the sentence below what it imposed," but chose not to do so. *Id*. at 1121. Accordingly, this court was confident the defendant's sentence would have remained the same if the district court had viewed the guidelines as advisory, and thus concluded the district court's error was harmless. *Id*.

Unlike the situation in *Ollson*, the district court here did not have unlimited discretion to grant Nickl's motion for downward departure. Although the court had discretion to grant Nickl's motion for downward departure on other grounds, it specifically concluded mandatory application of the sentencing guidelines prohibited it from granting a downward departure based on Nickl's restitution argument. Because the district court concluded mandatory application of the sentencing guidelines prohibited it from accepting Nickl's restitution argument, it is impossible to know whether the court would impose the same sentence if it viewed the guidelines as merely advisory. While the district court characterized

Nickl's sentence as "just" and "fair," it did not announce explicitly it would impose the same sentence if the guidelines were not mandatory. *See Serrano-Dominguez*, 406 F.3d at 1223-24. Because the district court concluded it was not free to exercise its unlimited discretion when it imposed Nickl's sentence, and because the court did not indicate an alternative sentence, we are "in the zone of speculation and conjecture." *Labastida-Segura*, 396 F.3d at 1143. Accordingly, we cannot conclude the district court's error was harmless, and we remand for resentencing.

## III. CONCLUSION

Because the district court committed prejudicial error when it interjected during Seward's testimony, we **reverse** and **remand** Nickl's aiding and abetting conviction. We further **remand** for resentencing in light of non-constitutional *Booker* error. The district court's other rulings are **affirmed**.