FILED
United States Court of Appeals
Tenth Circuit

October 15, 2009

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

APRIL DAWN CARVER,

Defendant - Appellant.

No. 09-7057

(E.D. Oklahoma)

(D.C. Nos. 6:08-CV-00322-RAW and
6:07-CR-00031-RAW-1)

---

## ORDER DENYING CERTIFICATE OF APPEALABILITY

---

Before **HENRY,** Chief Circuit Judge, **HARTZ**, and **O'BRIEN**, Circuit Judges.

---

April Dawn Carver, appearing pro se, requests a certificate of appealability

(COA) to appeal the district court's denial of her motion for a writ of habeas

corpus under 28 U.S.C. § 2255. *See id.* § 2253(c)(1)(B) (requiring COA to appeal

dismissal of § 2255 motion). Because no reasonable jurist could conclude that

Ms. Carver's § 2255 motion should have been resolved in a different manner, *see*

*Slack v. McDaniel*, 529 U.S. 473, 485 (2000), we deny her request for a COA and

dismiss this appeal.

## I.    BACKGROUND

Ms. Carver entered into a plea agreement with the government and pleaded

guilty on July 18, 2007, in the United States District Court for the Eastern District

of Oklahoma to two counts of making a firearm (26 U.S.C. § 5861(f)) and two counts of possession of an unregistered firearm (*id.* § 5861(d)). Because she used the firearm in connection with a conspiracy to commit murder, the court's guidelines calculation began with the base offense level for conspiracy to commit murder. *See* USSG §§ 2K2.1(c)(1)(a); 2X1.1(a). Under USSG § 2A1.5(a), that base offense level is 33. Taking into account a 3-level reduction for acceptance of responsibility, *see* USSG § 3E1.1, her total offense level was determined to be 30. With a criminal history category of I, the guidelines sentencing range was 97 to 121 months' imprisonment. *See id.* ch. 5, pt. A. The district court sentenced her to 120 months' imprisonment.

On August 25, 2008, Ms. Carver filed a § 2255 motion contending that her counsel provided ineffective assistance because (1) he failed to challenge the district court's use of USSG § 2A1.5 on the ground that the plea agreement did not mention any conspiracy to commit murder; and (2) he failed to challenge the district court's denial of the government's motion under USSG § 5K1.1 to reduce her offense level for substantial assistance. She argued that "[a]s a result of the aforenoted errors," her plea was not knowingly, voluntarily, and intelligently entered. R. at 14. She also contended that her counsel had given her an inaccurate estimate of her sentence, causing her to accept the plea agreement. The court denied the motion.

**II. DISCUSSION**

"A certificate of appealability may issue . . . only if the applicant [for a COA] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits," the prisoner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. If the motion was denied on procedural grounds, the applicant faces a double hurdle. Not only must the applicant make a substantial showing of the denial of a constitutional right, but she must also show "that jurists of reason would find it debatable . . . whether the district court was correct in its procedural ruling." *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the [motion] or that the [movant] should be allowed to proceed further." *Id.*

In this court Ms. Carver argues that her counsel provided ineffective assistance because he did not contest the district court's guidelines calculation and failed to inform her that her offense level (and sentence) could be enhanced on the basis of relevant conduct not contained in the plea agreement. She also contends that the district court was biased against her. To pursue these challenges, however, she must overcome a waiver in her plea agreement. Paragraph 21 of the agreement states:

Defendant expressly waives the right to appeal defendant's sentence on any ground, except to challenge an upward departure from the applicable guideline range as determined by the Court. Defendant specifically waives any appeal rights conferred by Title 18, United States Code, Section 3742, any post-conviction proceedings, and any habeas corpus proceedings. Defendant is aware that Title 18, United States Code, Section 3742 affords defendant the right to appeal the sentence imposed. Defendant is also aware that the sentence herein has not yet been determined by the Court. Defendant is aware that any estimate of the probable sentencing range that defendant may receive from his attorney, plaintiff, the probation office, or any agents of such parties, is not a promise, and is not binding on plaintiff, the probation office, or the Court. Realizing the uncertainty in estimating what sentence defendant will ultimately receive, defendant knowingly waives the right to appeal the sentence (except as to an upward departure) and agrees not to contest such sentence in any post conviction proceeding, including but not limited to writs of habeas corpus or coram nobis concerning any and all motions, defenses, probable cause determinations, and objections which defendant has asserted or could assert to this prosecution and to the court's entry of judgment against defendant and imposition of sentence, in exchange for the concessions made by the United States in this agreement and the execution of the agreement itself.

R. at 41–42.

"[A] waiver of § 2255 rights in a plea agreement is generally enforceable . . . ." *United States v. Cockerham*, 237 F.3d 1179, 1181 (10th Cir. 2001). We determine whether such waivers are enforceable by examining "(1) whether the [§ 2255 motion] falls within the scope of the waiver of [postconviction] rights; (2) whether the defendant knowingly and voluntarily waived his [postconviction] rights; and (3) whether enforcing the waiver would result in a miscarriage of

justice." *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (reviewing a waiver of appellate rights).

It is clear that Ms. Carver's collateral attack on her sentence falls within the scope of the waiver in her plea agreement. The second *Hahn* requirement is also satisfied because Ms. Carver has not argued that she involuntarily waived her postconviction rights to challenge her sentence and conviction.

As for the third *Hahn* requirement, we described in *Hahn* the circumstances under which enforcing a waiver would result in a miscarriage of justice:

> Appellate waivers are subject to certain exceptions, including [1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful. [*United States v.*] *Elliot*, 264 F.3d [1171,] 1173 [(10th Cir. 2001)] (citing *United States v. Cockerham*, 237 F.3d 1179, 1182 (10th Cir. 2001).

359 F.3d at 1327 (brackets in original) (internal quotation marks omitted). Here, there is only one possible ground for determining that enforcement of the waiver would result in a miscarriage of justice—namely, that Ms. Carver's plea itself was invalid because of ineffective assistance of counsel. We specifically recognized in *Cockerham* that a waiver of postconviction relief contained in a plea agreement was unenforceable in a § 2255 motion "based on ineffective assistance of counsel claims challenging the validity of the plea . . . ." 237 F.3d at 1187.

Ms. Carver makes several claims of ineffective assistance of counsel. Two, however, do not relate to the validity of her plea; they challenge only her counsel's performance at sentencing (failure to contest either the application of § 2A1.5 or the district court's denial of the government's motion to depart downward for substantial assistance). But she does raise one claim regarding deficient performance of her counsel that could have affected her guilty plea. She claims that her counsel gave her an inaccurate estimate of her possible sentence under her plea agreement, causing her to accept the agreement. This claim, however, was properly rejected by the district court.

"In order to establish a successful claim for ineffective assistance of counsel, [Ms. Carver] must show (1) that counsel's performance was deficient, and (2) that this deficient performance prejudiced [her] defense." *United States v. Orange*, 447 F.3d 792, 796 (10th Cir. 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To satisfy the prejudice requirement, she "must show that there is a reasonable probability that but for counsel's alleged errors, the result of the proceeding would have been different." *Id.* at 797. "Because [Ms. Carver] must demonstrate both *Strickland* prongs to establish [her] claim, a failure to prove either one is dispositive." *Id.* at 796–97 (citation omitted).

The district court concluded that Ms. Carver failed to satisfy the prejudice requirement because she had not shown that she would not have entered the plea had her attorney accurately estimated her sentence. Indeed, Ms. Carver has never

contended that she would not have entered the plea if her counsel had informed her that the court could take into account conduct not specifically mentioned in the plea agreement when calculating her sentence. Moreover, the record fully supports the conclusion that Ms. Carver herself was aware that the court could give her the sentence she ultimately received, regardless of her counsel's alleged deficiencies. Paragraph 21 of the plea agreement states that "any estimate of the probable sentencing range that defendant may receive from his attorney . . . is not a promise, and is not binding on plaintiff, the probation office, or the Court." R. at 41. And Paragraph 14 states that "the Court is free to impose upon the defendant any sentence up to and including the maximum sentence of imprisonment . . . on each of the Counts." *Id.* at 37. She was later advised during her plea colloquy that her offenses could be punished by up to 40 years' imprisonment and she then acknowledged that her sentence was "solely a matter within the control of [her] sentencing judge, subject to the advice of the Federal Sentencing Guidelines." *Id.* at 78. No reasonable jurist could debate whether she is entitled to relief on this claim. Therefore the waiver in her plea agreement is enforceable and she is barred from bringing claims under § 2255.

Although Ms. Carver's bias claim is barred, we nevertheless address it because it could taint the reputation of the judiciary. Fortunately, the claim is baseless. Ms. Carver contends that in an earlier, unrelated case, the same district judge also rejected the government's motion to reduce the defendant's sentence

-7-

for substantial assistance under USSG § 5K1.1 but was bound by statutory maximums from sentencing the defendant to more than 60 months. She appears to argue that the district court sentenced her harshly to make up for that earlier sentence. She also points to an affidavit filed by her mother which states that an attorney "expressed his personal knowledge" that Ms. Carver's sentence "'had something to do with'" that earlier case. *Id.* at 135. The affidavit further states that during sentencing, the district court's "demeanor, attitude, expressions and words, did then and do now, lead me to believe" that the district court was biased against Ms. Carter. *Id.* at 134.

"To demonstrate a violation of due process because of judicial bias, a claimant must show either actual bias or an appearance of bias. A judge must recuse himself if sufficient factual grounds exist to cause a reasonable, objective person, knowing all the relevant facts, to question the judge's impartiality." *United States v. Nickl*, 427 F.3d 1286, 1298 (10th Cir. 2005) (citation and internal quotation marks omitted). But adverse rulings cannot in themselves support a charge of judicial bias, *see id.*, and "conclusions, rumors, beliefs, and opinions are not sufficient to form a basis for disqualification," *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987). In addition, "[a]lthough a judge's remarks during the course of a trial may be 'critical,' 'disapproving,' or 'hostile' to a party, usually they will not support a partiality charge." *Nickl*, 427 F.3d at 1298 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

To support her bias allegation, Ms. Carver relies solely on an adverse ruling and opinions that reference no specific facts. She has presented no evidence that would "cause a reasonable, objective person, knowing all the relevant facts, to question the judge's impartiality." *Id.* (internal quotation marks omitted). Accordingly, her claim is totally without merit.

## III.   CONCLUSION

No reasonable jurist could debate whether Ms. Carver is entitled to relief. We therefore DENY the application for a COA and DISMISS the appeal. We GRANT Ms. Carver's motion to proceed *in forma pauperis* on appeal.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge