**IN RE: Bradley Alvin OTTMAN and Dana Marie Ottman, Debtors.**

**Case No. 11–35219 SBB**

United States Bankruptcy Court, D. Colorado.

Signed June 26, 2015

Stephen E. Berken, Denver, CO, for Debtors.

## ORDER DENYING MOTION TO RECUSE JUDGE SIDNEY B. BROOKS

Sidney B. Brooks, United States Bankruptcy Judge

THIS MATTER is before the Court on the Motion to Recuse Judge Sidney B.

Brooks (Docket No. 122) (the "Motion") filed by Debtors Bradley Alvin Ottman and Dana Marie Ottman and the response thereto (Docket No. 126) (the "Response") filed by Standing Chapter 13 Trustee Sally Zeman (the "Trustee"). The Court, having considered the Motion; the Response; the Debtors' Reply to the Motion (Docket No. 129); the transcript of the April 23, 2015 hearing (the "Transcript") in this case; the trial exhibits offered by both parties; and the Status Report Regarding Debtors' Amended Schedules I and J (Docket No. 116); hereby makes the following findings pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure: [1]

## I. BACKGROUND AND FACTS

### A. The Debtors' Bankruptcy Case

The Debtors filed this Chapter 13 bankruptcy case on October 26, 2011. The Debtors' Amended Chapter 13 plan was confirmed on September 18, 2012.[2]

On December 17, 2013, the Debtors filed a motion to modify their Chapter 13 plan, along with amended schedules I & J updating their post-confirmation income and expenses.[3] The Trustee objected to the modified plan, and the Court denied the motion to modify following a hearing on March 4, 2014.[4] A new modified plan (the "Second Modified Plan") was proposed on

March 18, 2014 (the "Second Motion to Modify"), and the Trustee again objected (the "Trustee's Objection").[5] A certificate of contested matter was filed on February 13, 2015, and an evidentiary hearing on approval of Debtors' Second Motion to Modify was set for April 23 and 24, 2015.[6]

In their Second Motion to Modify, the Debtors asserted that modification of their plan was necessary because Mr. Ottman's income had substantially decreased. The Trustee's Objection asserted that the proposed modification was not made in good faith because Mr. Ottman's December 27, 2013 pay advice showed nearly $1,000 more in monthly income than the Debtors' amended schedule I, filed on December 17, 2013.[7] The Trustee also argued that certain expenses on the Debtors' amended schedule J were not reasonably necessary for a household of two persons, including business expenses for a real estate business that had not earned income in 2012, 2013, and 2014.[8]

The Court held an evidentiary hearing on the Second Motion to Modify on April 23, 2015 (the "Hearing"). The matter was not concluded, and the hearing was continued to May 26, 2015. The Court ordered the Debtors to file updated schedules I & J and both parties to file proposed findings of fact and conclusions of law.[9] The continued hearing was vacated after the Debt-

---

1. The Court notes that the Debtors' Reply was filed more than thirty (30) days after submission of their Motion and without leave of Court. The Court has nonetheless reviewed and considered the Debtors' Reply and the arguments raised with regard to the substance of this matter are addressed herein. To the extent the Debtors argue that the Trustee's response is deficient because it was submitted on her behalf by her counsel, Mr. Lambert, the Court finds such argument to be groundless and without merit.

2. Docket No. 66.

3. Docket Nos. 83, 84, 85.

4. Docket Nos. 89, 96.

5. Docket Nos. 99, 100, 103.

6. Docket Nos. 107, 108.

7. Docket No. 89. *See also* Docket Nos. 83, 88.

8. Docket No. 89.

9. Docket No. 113.

ors filed a motion to recuse the undersigned judge.[10]

### B. The Recusal Motion

On May 13, 2015, the Debtors filed their Motion to Recuse Judge Sidney B. Brooks. In their Motion, the Debtors argue that the undersigned Judge should recuse himself because his criticism of Debtors' counsel, Stephen Berken, during the Hearing was "unwarranted, prejudicial, and created an appearance of impropriety." [11]

Specifically, the Debtors identified several instances at the Hearing where they and their counsel felt the Court was "overly critical." These include:

- An extended discussion of the accuracy and date of the "Schedules I & J" presented by Debtors' counsel.[12]

- The Court's comment that "[n]o, no, no, no. I'll tell you, this record will be impossible for anybody to follow." [13]

- The Court's inquiry as to why a summary of the Debtors' schedules was not prepared.[14]

- The Court's response to Debtors' counsel's inquiry as to why Trustee's counsel was not questioned for not preparing a summary of the Debtors' schedules: "[b]ut the burden's on you and you know that the party that has the burden has to dot their I's and cross their T's." [15]

- The Court's comment that the hearing was progressing too slowly: "I

didn't think this trial was going to take all day. I thought it was going to take a very short period of time. I've got some things that are hounding me on my desk back there. How much longer do you anticipate? We haven't even had Mr. Ottman." [16]

- The Court's inability to continue beyond 2 p.m. on the day of the Hearing.[17]

The Motion described the Judge's tone toward Debtors' counsel as "one of condescension, a profound lack of respect, and a manner that borders on scorn." [18] The Motion also asserted that the "appearance of impropriety is inescapable due to the Judge's history with Debtors' counsel," but provided no further information.[19]

### C. The Trustee's Response to the Motion to Recuse

The Trustee's Response objected to Debtors' Motion and stated that "the record, as a whole, fail[s] to demonstrate a degree of favoritism or antagonism to Debtors or Debtors' counsel that shows [the undersigned Judge] is unable to make a fair judgment." [20] The Trustee acknowledges that the undersigned Judge "made comments that were critical of the manner in which Debtors' counsel was presenting Debtors' case," but identified several citations in the record which she asserts demonstrates the Court's ability to make a fair judgment. These include:

---

10. Docket Nos. 122, 123.

11. Debtors' Mot. ¶ 37.

12. Debtors' Mot. ¶¶ 6–15, 18.

13. Debtors' Mot. ¶ 16.

14. Debtors' Mot. ¶ 17.

15. Debtors' Mot. ¶ 20.

16. Debtors' Mot. ¶¶ 21, 22.

17. Debtors' Mot. ¶ 23.

18. Debtors' Mot. ¶ 44.

19. Debtor's Mot. ¶ 46.

20. Trustee's Resp. ¶ 6.

- Overruling the Trustee's objection to a leading question even though the objection was technically correct.[21]

- The Court's comment: "And if to [Mr. Berken], you say it's 'daunting' and you say it took 'months and months and months' for you to get a handle on it, you can understand that I want something that I can make sense out of, so that I can rule in favor of your clients." [22]

- Providing the Debtors an opportunity to file current Amended Schedules I and J so that the Court could have the current figures which the Debtors desired the Court to consider.[23]

- Requesting proposed findings of fact and conclusions of law from both parties.[24]

- The Court's comment: "I have great sympathy for people [such as the Debtors] that have enormous and unplanned medical expense. It takes the hole out of your budget. I understand that." [25]

The Trustee also argued that Debtors' assertion that the Judge's history with Debtors' counsel causes an appearance of impropriety is baseless because the Debtors failed to provide any facts to support the statement.[26]

---

**21.** Trustee's Resp. ¶ 5 (citing Hearing Trans. 32:16–25).

**22.** Trustee's Resp. ¶ 5. (citing Hearing Trans. 68:15–19). Earlier in the Hearing, Mr. Berken told the Court: "This is a daunting amount of [financial] material that has taken months and months and months and months to assemble. I'm trying to present it as clearly as I can and I appreciate the Court's concern but we do want to make a record so I'll go as slowly as possible. I do understand. I have a grasp of the numbers. I'm superior to the Court just because I've dealt with this so I'll go slower." Hearing Trans. 55:5–11.

## II. Conclusions of Law

### A. Standard for Recusal

Debtors argue that the undersigned judge should recuse himself pursuant to 28 U.S.C. § 455(a) and (b)(1). Federal Rule of Bankruptcy Procedure 5004 governs disqualification of a bankruptcy judge:

(a) **Disqualification of Judge.** A bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstances arises or, if appropriate, shall be disqualified from presiding over the case.[27]

Section 455 of Title 28 of the United States Code provides, in relevant part, that:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.[28]

A judge's impartiality is subject to an objective test which requires a judge to recuse himself when "a reasonable per-

---

**23.** Trustee's Resp. ¶ 5 (citing Hearing Trans. 84:25–85:14; 85:25–86:2; 86:5–17; 105:4–7).

**24.** Trustee's Resp. ¶ 5 (citing Hearing Trans. 106:12–24).

**25.** Trustee's Resp. ¶ 5 (citing Hearing Trans. 55:24–56:1).

**26.** Trustee's Resp. ¶ 7.

**27.** Fed. R. Bankr. P. 5004(a).

**28.** 28 U.S.C. § 455.

son, knowing all the relevant facts, would harbor doubts about the judge's impartiality."[29] In the context of a motion to recuse, "the reasonable person standard contemplates a well-informed, thoughtful, and objective observer, rather than the hypersensitive, cynical, and suspicious person."[30]

■ The Court has a duty to recuse itself where any of the statutory grounds set forth in § 455 exist; however, "there is a corresponding duty not to do so if cause for recusal has not been shown."[31] Judges should take care not to remove themselves needlessly "because a change of umpire in mid-contest may require a great deal of work to be redone ... and facilitate judge shopping."[32]

■ In general, "when a judge's words or actions are motivated by events originating within the context of judicial proceedings, they are insulated from charges of bias."[33] These include remarks which may be considered critical, or even hostile, to a party or its counsel. The Supreme Court has previously explained in *Liteky v. United States* when courtroom conduct *is* and *is not* grounds for recusal:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality

motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.[34]

The Supreme Court went on to provide an example of what it considers to meet the high standard for recusal:

> An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v. United States*, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921), a World War I espionage case against German–American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." *Not* **establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been con-**

---

**29.** *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 659 (10th Cir.2002).

**30.** *Royce v. Veteran Affairs Regional Office*, Case No. 08–cv–01993–KMT–KLM, 2009 WL 1965497, *1 (D.Colo. July 8, 2009).

**31.** *In re Haas*, 292 B.R. 167, 175 (Bankr. S.D.Ohio 2003). *See also Bryce*, 289 F.3d at 659–660 (A judge has "as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require. The recusal statute should not be construed so broadly as to become presumptive or to require recusal based on unsubstantiated suggestions of personal bias or preju-

dice."); *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir.1987) ("There is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to so when there is.").

**32.** *Matter of National Union Fire Ins. Co. of Pittsburgh, Pa.*, 839 F.2d 1226, 1229 (7th Cir. 1988).

**33.** *U.S. v. Nickl*, 427 F.3d 1286, 1298 (10th Cir.2005).

**34.** *Liteky v. United States*, 510 U.S. 540, 555– 56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (internal citations omitted).

firmed as federal judges, sometimes display. [35]

Put another way, "a judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration"—are not grounds for recusal.[36]

### B. The Hearing

■ Here, the matters alleged to constitute bias primarily stem from dialogue between the undersigned Judge and Debtors' counsel during the course of the Hearing.[37] The Debtors have also alleged that the Court's history with their counsel constitutes grounds for recusal.

The context of the discussions at issue here involves Debtors' counsel presenting evidence at the April 23, 2015 Hearing using stale income and expense schedules and relying on old, dated financial information, not current information.[38] The Court will consider each of the Debtors' contentions individually:

#### i. *The discussion regarding Schedules I & J*

The Court's review of the Transcript confirms the Debtors' assertion that there was extended discussion concerning a certain version of Schedules I (Debtors' income) and J (Debtors' expenses) which the Debtors tried to utilize as an exhibit during the direct examination of Mrs. Ottman. The impetus for this discussion was confusion regarding a notation of "12/13" on the top of the Schedules. Importantly, Exhibit 7—Schedules I and J—were undated; they did *not* have a date in the designated space for a date.

In their Motion, the Debtors take offense to the Court's inquiries regarding the date of Exhibit 7 and characterize the dialogue as "belabor[ed]" and "condescending." [39] Debtors also assert that Debtors' counsel "could not get a word in edgewise [during his direct examination of Mrs. Ottman] as the Judge kept interrupting." [40]

The Debtors make much ado about the fact that the Court did not recognize that the "12/13" notation was the date the Official Schedule I and J Forms were authored by the Judicial Conference of the United States—a point not raised by Debtors' counsel until this Motion was filed.

---

35. *Id.* (emphasis added).

36. *Id.*

37. For purposes of considering the Debtors' Motion, the Court reviewed the entire transcript of the Hearing. The entire Hearing Transcript is attached to this Order so that the Debtors, the Trustee, and other interested parties may consider the context of the statements discussed herein and review the conduct of the Hearing as a whole.

38. The Court is aware that the Debtors continue to argue, both in their Motion and Reply and their recent Status Report, that current income and expense information was provided at the Hearing. However, as discussed more fully herein, the Hearing Transcripts shows that it was *Debtors' counsel*, not the Court or the Trustee, who continually identified the date of Exhibit 7 (Schedules I and J) as being nearly a year-and-a-half old. Following the Hearing, on April 27th, Debtors' counsel submitted to the Court a copy of an exhibit, Schedules I and J, with the date March 6, 2015. However, Debtors' counsel never once informed the Court at the Hearing that Exhibit 7 contained information that was prepared as of March 2015, or any date other than December 2013.

39. Debtor's Mot. ¶¶ 12, 15.

40. Debtors' Mot. ¶ 18. The Debtors cite in their Motion to page 75 of the Hearing Transcript, which is toward the end of the ongoing discussion concerning between the Court and counsel concerning Debtors' Exhibit 7. The dialogue regarding Exhibit 7 begins on page 62. The reasoning for the Court's multitude of questions concerning Exhibit 7 is discussed further herein.

However, the Court's review of the Transcript shows that it was Debtors' counsel who first created the confusion by informing the Court that the proffered Schedule I (Exhibit 7) was dated December 2013:

> MR. BERKEN: Your Honor, is there an objection before the Court or couldn't we deal with this during cross-examination?
>
> THE COURT: Well, in all likelihood yes but let me ask why are you—I have here Schedule I, Exhibit 7. It's not dated. What's the date on this, please?
>
> MR. BERKEN: Well, there's a date on the very top right, Your Honor, that says December 2013.
>
> THE COURT: Okay. But right above that it says month, day, year, so it is December 2013, okay.[41]

Debtors' Exhibit 7, undated but introduced at the Hearing, was never filed with the Court.[42] The Court was understandably confused as to why evidence of income from 2013 was being offered as evidence of income for the April 23, 2015 Hearing. The Court subsequently asked Debtors' counsel to clarify, and Debtors' counsel again confirmed that Schedule I was from December 2013:

> MR. BERKEN: ... Counsel's right, we were using this and it went back and forth between our offices as this was the most accurate as of when it went back and forth between our offices but since that time we've got a little different expenses going on, not so much I. I think I is still good but J, I do intend to flush it out a little bit.
>
> THE COURT: Is this the I that you're submitting as being your expenses today?

> MR. BERKEN: Well, I is income so it's not expenses.
>
> THE COURT: Excuse me, income—
>
> MR. BERKEN: Right.
>
> THE COURT:—today.
>
> MR. BERKEN: Yes.
>
> THE COURT: Today.
>
> MR. BERKEN: Today.
>
> THE COURT: All right. But it's dated December 2013.
>
> MR. BERKEN: Yes, that is what we argue, this is what we were arguing should be used by the Court under 1329 as to what the Court should be reviewing as of April 2015.[43]

Debtors' counsel had additional opportunities to correct the record regarding the date of his own exhibit, but he failed to do so:

> THE COURT: All right. Then why are we going to a December 2013 exhibit?
>
> MR. BERKEN: Well, that's just—when I printed this off, that's what the form—it didn't generate a new one.
>
> . . .
>
> THE COURT: Okay. But I'm not—this is quite extraordinary frankly.
>
> MR. BERKEN: It's extraordinary?
>
> THE COURT: Yeah, it's extraordinary that I would be handed a December 2013 statement that's never been submitted to the Court, has never been signed, has never been presented to me, and we're having a trial in April of 2013–2015 . . .
>
> MR. BERKEN: Well, during the break I'll go print the PACER for the last I and we can go with the I.[44]

---

41. Hearing Trans. 63:2–11.

42. Hearing Trans. 63:20–23 ("THE COURT: Okay. Has [Exhibit 7] ever been filed in this case? MR LAMBERT: No. MR. BERKEN: Not this iteration, Your Honor.").

43. Hearing Trans. 63:24–64:17.

44. Hearing Trans. 66:12–15; 66:24–67:7.

Further adding to the confusion of the Debtors' presentation, as the Court noted at the Hearing, the Trustee's Exhibit C—a Schedule I dated and filed with the Court by the Debtors in December 2013—and Debtors' Exhibit 7—a Schedule I presented as *also* being dated December 2013, but unfiled—contained markedly different numbers for the Debtors' earnings.[45]

The Court finds that the discussion regarding the date of Schedules I and J represent nothing sinister toward the Debtors. Rather, the Court believes it represents quite the opposite—an effort by the undersigned Judge to wade through confusing testimony and contradictory, dated documents to ensure the Court received accurate information from the most relevant time period.[46] The Court is well within its bounds to comment on the presentation and adequacy of evidence as it is presented at a hearing. Even accepting as true the Debtors' contention that the undersigned Judge's comments were "belabored" and "condescending"—a conclusion not borne out by a review of the transcript—such comments would not cause a reasonable person to doubt this Court's impartiality.

ii. *The Court's comment regarding the difficulty of following the Hearing record*

The Court's review of the Transcript confirms the Court's comment cited by Debtors concerning the hearing record:

MR. BERKEN: Judge, I don't see that. Where are you? What page are you on? Is that Bates 193 or is that Exhibit C?

THE COURT: No, sir. I'm looking at Exhibit C which the Debtor—

MR. BERKEN: Oh, I see, the cumulative. I see.

THE COURT: Yeah.

MR. BERKEN: All right, 5124.

THE COURT: No, no, no, no. I'll tell you, this record will be impossible for anybody to follow. I am looking at Exhibit C, income schedule for these Debtors dated December 2013. Okay? Are you with me? [47]

The Court finds that this comment arises directly from events occurring during the Hearing and is indicative of the Court's efforts to ensure the hearing record consistently referred to exhibits by the same label. Such comments are nothing more than courtroom administration, and certainly not an expression of bias which supports recusal. While the Debtors may have sensed frustration or impatience on behalf of the Court, clarity of the record benefits both parties in the event of an appeal. A reasonable person would not find that such a comment creates doubt about the Court's ability to make a fair judgment.

iii. *The Court's comments regarding a summary of the Debtors' schedules*

The Court's review of the Transcript confirms that, during the direct examination of Mrs. Ottman, the Court commented that Debtors' counsel should have prepared a summary of certain items on the Debtors' schedules:

MR. BERKEN: So I don't know if he's grouped in other—so I'm putting on my Debtors here and like you said, you had it for months and months and months and it's daunting and in two hours I'm still lost but go ahead, please.").

---

45. Hearing Trans. 69:1–9, 70:2–7.

46. *See, e.g.,* Hearing Trans. 55:24–56:5("THE COURT: I have great sympathy for people that have enormous and unplanned medical expenses. It takes the hole out of your budget. I understand that. But I have to have the evidence for me to rule in favor of the

47. Hearing Trans. 69:10–20.

case and then he can cross and do what he wants with his case, so I'm just talking about Xcel right now and I'd like to focus on just Xcel.

THE COURT: Xcel for which months?

MR. BERKEN: That would be Bates number 89, which represents January 2014 through and including Bates number 102, which is February 2015. One, two—

THE COURT: So that would be 13 months, I presume?

MR. BERKEN: Yes, 13 months. Okay.

MR. BERKEN: Do you have your calculator? 2627 divided by 13.

WITNESS: 202.07

MR. BERKEN: Okay.

WITNESS: I believe we only did January to January, not 13 months. We just did 12.

MR. BERKEN: I'm sorry. I'm going to have to recalculate this so we'll hold it for a break.

THE COURT: Let me just suggest. This is a learning moment for all of us. If this is calculated before you walk into court and it's put down in tabular fashion for all three interested parties in this room, then this could be handled in about two minutes. We've just spent about 10 minutes on utilities alone. This could be a long, long hearing and I'm not even sure we're going to come out

with numbers that are reliable and certain and easy to work with.[48]

The Debtors point out that a similar comment was not made to the Trustee during his cross-examination when he asked about individual line items. In their Motion, Debtors note that their counsel asked the Court "why he was held to a different standard," and the Debtors take exception to the Court's response that "the burden's on you and you know that the party that has the burden has to dot their I's and cross their T's."[49]

Again, the Court finds its comments to arise directly from events occurring during the Hearing. There is no doubt that the Court was critical of—and at times frustrated with—the Debtors' presentation of the evidence. The Court noted on multiple occasions that it was confused by the Debtors' direct examination and was concerned about the reliability of the numbers presented.[50] The Court's statements regarding its desire to have the Debtors' case-in-chief presented in an accurate, coherent fashion would not cause a reasonable person to doubt its impartiality.

iv. *The Court's comments regarding the duration of the Hearing*

The Court's review of the Transcript confirmed that, on several occasions during the Hearing, the undersigned Judge commented on the amount of time Debtors' counsel was taking to present evidence on certain issues.[51] The Debtors also com-

---

48. Hearing Trans. 33:21–34:21

49. Debtors' Mot. ¶ 20.

50. *See, e.g.,* Hearing Trans. 35:19–23 ("THE COURT: Well, I'm not so worried about the Court's time so much. I'm worried about having a record that can be understood and worked with and sensible on appeal, so right now, I think when it comes to utilities we're kind of all over the board ... "); Hearing Trans. 55:12–55:19 ("THE COURT: Okay. If you say it's daunting and it's taken like you

said months and months and months to understand and you're having surprises and you are confused, can you imagine where I am in about two hours? I am immensely more confused than you are and you've had months to deal with it, so I would just urge you, present it in a cogent and organized fashion or logical sequential fashion so I can make sense of it. Like it or not, the burden's on you.").

51. *See, e.g.,* Hearing Trans. 76:25–77:3 ("THE COURT: ... I didn't think this trial was going to take all day. I thought it was

plained that, despite being scheduled for a two-day hearing, the Court adjourned the Hearing at 2:26 p.m. on April 23rd due to a scheduling conflict of the undersigned Judge.

However, the Debtors fail to mention that—despite time being reserved the following day to continue the Hearing—the Hearing could not go forward because Debtors' counsel did not feel he was able to file an amended and current Schedule I and J before the following Monday:

> THE COURT: Well, that's what [the Hearing] was for but we aren't getting to where we want to get. The Ottmans have, as Mr. Berken said, have a lot of financial information. It is daunting and it took Mr. Berken months and months and months to get his hands on it and to get an understanding of it and we're having a very short hearing here and I don't have a good understanding of it and the burden's on Mr. Berken so I want him to have an opportunity to place before us firm and clear and final numbers, so that's what we're going to do and Mr. Berken, I think that helps you because we will no longer have floating numbers or 15–month–old schedules that were kind of piecemeal changing or modifying based on the dynamic situation of these debtors.
>
> MR. BERKEN: I agree, Your Honor, and we can—I'm just looking at the calendar. We can file that by April 27, which is Monday, if that's all right.
>
> THE COURT: Well, I was going to hold a hearing tomorrow.

MR. BERKEN: Oh.[52]

The Court's inability to conclude the Hearing as scheduled, and its comments relating to the duration and timing of the proceedings, were the result of events occurring during the Hearing. As the Court noted, the order to the Debtors to amend their schedules was an effort to help, not hinder, the Debtors in presenting the evidence necessary for the Court to potentially rule in their favor. These efforts would not cause a reasonable person to doubt the Court's ability to make a fair judgment.

### v. The Court's history with Debtor's counsel.

In their Motion, the Debtors argue that "the appearance of impropriety is inescapable due to the Judge's history with Debtors' counsel."[53] However, the Debtors failed to provide any factual information at all which supports this assertion. Therefore, the Court has no means of evaluating the Debtors' argument and finds it without merit.

### III. Conclusion

Taken as a whole, the Court finds that the Hearing Transcript evidences confusion—and occasionally frustration—by the Court as it attempted to follow a somewhat erratic and incoherent presentation by Debtors' counsel. The Court's comments were based entirely on conduct observed at the Hearing. The Court finds no evidence of favoritism to the Trustee or antagonism to the Debtors that demonstrates

---

going to take a very short period of time. I've got some things that are hounding me on my desk back there."); Hearing Trans. 112:4–112:10 ("THE COURT: ... Just coming into court with, you know, I don't know, 100 pages, 150 pages, sometimes double sided with multiple copied exhibits on one page, not having that all ironed out and presentable in a cogent fashion, I was working like heck for

most of the first two hours just trying to keep up and make sure I didn't lose track of anything. It was just very time consuming and unnecessarily so.").

**52.** Hearing Trans. 86:5–23.

**53.** Mot. ¶ 46.

the Court is unable to make a fair judgment in this case. The Court has reviewed the affidavit by Mrs. Ottman which accompanies the Motion and is cognizant of the fact that she feels as though the Court has already made up its mind concerning the Second Motion to Modify. However, the Court has a duty not to recuse itself needlessly and finds that its concluding comments at the Hearing are instructive:

> THE COURT: ... I realize that families have dynamic situations. Things change. Medical expenses can run out of control. I strongly suspect but only suspect because I don't have the evidence in an orderly and cogent fashion, that there's the case to be made for the Debtors to prevail but so far the evidence is not in front of me. Again, I have to have it brought together so I can understand it and I'm hoping by the next time we convene on May 26th and with this additional Exhibit I and J and the one month that the parties can communicate between now and then, that these things can be ironed out and I'm sorry that we have a continuance in this.[54]

Criticism of counsel is rarely grounds for recusal under the principles set forth by the Supreme Court. The conduct complained of by the Debtors consists of routine hearing administration efforts and ordinary admonishments to counsel regarding the presentation of his clients' case. These statements are hardly indicative of unequivocal favoritism or antagonism that would render fair judgment impossible. Instead, the Transcript shows that the Court has taken extra efforts to ensure the Debtors' information is adequately and accurately presented so that the Court can make an informed decision.

Accordingly, for the reasons stated herein, the Motion to Recuse is **DENIED**. The Court will schedule a continued evidentiary hearing on the Debtors' Second Motion to Modify by separate order to be issued at a later time.

---

54. Hearing Trans. 113:16–114:2.